

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-6-2001

# United States v. Galo

Precedential or Non-Precedential:

Docket 99-3870

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"United States v. Galo" (2001). *2001 Decisions.* Paper 21.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/21

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 6, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3870

UNITED STATES OF AMERICA

v.

ANDREW F. GALO,

     Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
Criminal No. 99-cr-05000
District Judge: Hon. Alan N. Bloch

Argued: May 9, 2000

Before: *GREENBERG and McKEE, Circuit  Judges, and
GARTH, Senior Circuit Judge


(Opinion Filed: February 6, 2001)


_____
* Honorable Morton I. Greenberg assumed Senior Status on June 30,
2000.

SHELLY STARK, ESQ.
Federal Public Defender
W. PENN HACKNEY, ESQ.
Asst. Federal Public Defender
KAREN SIRIANNI GERLACH, ESQ.
  (Argued)
Asst. Federal Public Defender
415 Convention Tower
960 Penn Avenue
Pittsburgh, PA 15222
Attorneys for Appellant

HARRY LITMAN, ESQ.
United States Attorney
BONNIE R. SCHLUETER, ESQ.
Asst. United States Attorney
MARY BETH BUCHANAN, ESQ.
  (Argued)
Asst. United States Attorney
633 U. S. Post Office & Courthouse
Pittsburgh, PA 15219
Attorneys for Appellee

OPINION OF THE COURT

McKEE, Circuit Judge.

Andrew Galo appeals the sentence that was imposed following his conditional plea of guilty to pr oduction of material depicting the sexual exploitation of childr en, in violation of 18 U.S.C. S 2251(a), and possession of material depicting the sexual exploitation of a minor , in violation of 18 U.S.C. S 2252(a)(4)(B). He argues that these statutes are unconstitutional per se, and as applied to him. He also challenges the district court's use of his prior state court convictions to enhance his sentence and impose a mandatory minimum sentence of 15 years imprisonment. We hold that Congress validly exer cised its authority under the Commerce Clause in enacting SS 2251(a) and 2252(a)(4)(B), and that those statutes are not unconstitutional as applied to Galo. We do, however, agree that the sentencing court erred in enhancing his sentence

2

based upon his prior state court convictions, and we will therefore remand for resentencing.

I. FACTUAL BACKGROUND.

In 1996, Galo was in a relationship with Sheila H. She had a young daughter whom we will refer to as Jessica H. Jessica H. had previously been sexually abused by one of her mother's boyfriends. That abuse caused Childr en and Youth Services ("CYS") to temporarily r emove Jessica from her home. She had been placed back in her home befor e or during Galo's relationship with her mother .

At some point, Galo persuaded Sheila H. to per mit Jessica H., then thirteen years old, to spend a night at his apartment. Galo accomplished this by threatening to tell CYS that Sheila H. had previously permitted Jessica H. to have contact with him. This would have jeopar dized Sheila's custody of her daughter because Galo had a state criminal record, the nature of which we discuss below. Sheila knew that Jessica should not have been per mitted to be in Galo's company without supervision because of Galo's background. Galo also threatened to have the utilities at Sheila H.'s residence turned off unless Jessica spent time with him. The utilities were register ed in his name. In addition to threats and coercion, Galo also cajoled Sheila by telling her that he might one day be Jessica's step-father, and suggesting that he and Jessica therefor e needed time to get acquainted.

On the evening of March 1, 1999 Jessica did stay with Galo. During her visit he took approximately 21 sexually explicit nude photographs of her after instructing her to pose nude and expose her genitals. Jessica knew that Galo had a temper and she was therefore appar ently too afraid to resist or refuse.

Galo took the undeveloped film containing these photographs to an Eckerd Drug Store for pr ocessing. However, the photo manager there stopped processing the film and alerted police as soon as she discover ed the sexually explicit nature of the photographs. Police responded and arrested Galo when he r eturned to pick-up the developed photographs. Initially Galo told the police

3

that the film belonged to a friend in Ohio, but he later changed his story and admitted that he knew the child in the photographs was naked. He denied having inter course with her and claimed that he only wanted to see if the pictures would "come out." Police obtained a search warrant of Galo's residence and seized 10 additional pictures of Jessica, as well as pictures of Galo's nieces. Some of the pictures were of girls in their underwear while others were fully clothed. Police also seized a.35mm Vivitar camera that was later identified as being the camera that took the indecent photographs. Subsequent investigation disclosed that the indecent pictures of Jessica had been processed on Kodak paper. The photographic paper, film, and Vivitar camera had all been manufactur ed outside of Pennsylvania.

II. PROCEDURAL HISTORY.

On April 6, 1999, a federal grand jury charged Galo in a two count indictment. Count One charged him with production of material depicting the sexual exploitation of children, in violation of 18 U.S.C. S 2251(a), and Count Two charged him with possession of material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. S 2252(a)(4)(B). Galo filed a motion to dismiss the indictment alleging that SS 2251(a) and 2252(a)(4)(B) were unconstitutional. He also claimed that application of the statutes to him deprived him of equal protection of the laws.

On July 29, 1999, the district court denied Galo's motion to dismiss the indictment and Galo immediately enter ed a conditional plea of guilty to both counts of the indictment. He preserved the following issues for appeal:

> (a) Whether Title 18, United States Code, Section 2251(a) is a valid exercise of the authority granted to Congress under the Commerce Clause.

> (b) Whether the evidence supporting the jurisdictional element of Title 18, United States Code, Section 2251(a) is sufficient under the Commerce Clause.

4

(c) Whether Title 18, United States Code, Section 2252(a)(4)(B) is a valid exercise of the authority granted to Congress under the Commerce Clause.

(d) Whether the evidence supporting the jurisdictional element of Title 18, United States Code, Section 2252(a)(4)(B) is sufficient under the Commer ce Clause.

The court accepted Galo's plea and thereafter r equested that Galo and the government file briefs addressing whether Galo's prior state convictions would subject him to the mandatory minimum sentence of 15 years, contained in 18 U.S.C. S 2251(d). Galo argued that he was not subject to the mandatory minimum sentence because the state convictions did not relate to the sexual exploitation of children as required under S 2251(d). The district court disagreed and concluded that Galo's prior state court convictions did subject him to the mandatory minimum. Consequently, the district court sentenced Galo to a term of imprisonment of 15 years (180 months), followed byfive years of supervised release.

This appeal followed.

III. DISCUSSION.

A. Constitutional Challenge to 18 U.S.C. SS 2251(a) AND 2252(b)(4)(B).

As noted above, Galo pled guilty to violating 18 U.S.C. SS 2251(a) and 2252(a)(4)(B). Section 2251(a), is captioned "Sexual Exploitation of Children," and pr ovides in relevant part as follows:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, . .. any sexually explicit conduct for the purpose of pr oducing any visual depiction of such conduct, shall be punished as provided under subsection (d), if such person knows or has reason to know that such visual depiction will be transported in interstate or for eign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or for eign

5

commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C. S 2251(a) (emphasis added). Section 2252(a)(4)(B), is captioned "Certain activities relating to material involving the sexual exploitation of minors," and pr ovides in relevant part:

(a) Any person who . . . (4) either . . . (B) knowingly possesses 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported by any means including computer, if –- (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct; shall be punished as provided in subsection (b) of this section.

18 U.S.C. S 2252(b)(4)(B). After Galo was sentenced, we decided United States v. Rodia, 194 F .3d 465 (3d Cir. 1999), cert. denied, ___ U.S. ___, 120 S. Ct. 2008 (2000). There we held that Congress enacted S 2252(a)(4)(B) pursuant to a valid exercise of authority under the Commer ce Clause. Section 2252(a)(4)(B) imposes criminal liability on anyone who possesses child pornography that has not itself traveled in interstate commerce, so long as one of the materials used to create the pornography has traveled in interstate commerce. We reasoned that Congress could have rationally concluded that intrastate possession of child pornography created a demand that substantially affected interstate commerce. Accor dingly, Congress could regulate intrastate possession of child por nography under the Commerce Clause in order to ef fectively regulate its impact on interstate commerce. Although Rodia focused only on S 2252(a)(4)(B), the same reasoning governs our analysis of S 2251(a) because both statutes contain the same jurisdictional element.

As we explained in Rodia, "[a] jurisdictional element [or hook] . . . refers to a provision in a federal statute that

6

requires the government to establish specific facts justifying the existence of federal jurisdiction in connection with any individual application of the statute." Rodia at 471. Here, the requirement that at least one of the materials used to produce the child pornography travel in interstate commerce provides the jurisdictional hook. Consequently, we find that Rodia forecloses Galo's attack upon the constitutionality of SS 2252 (a) and 2252 (a)(4)(B). Nonetheless, even though we are clearly bound by our holding in Rodia,[1] Galo argues that Rodia was wrongly decided. He asserts that Rodia ignor es the jurisdictional requirement contained in S 2254(b)(4)(B). Galo misreads Rodia.

In Rodia we concluded that the jurisdictional hook of S 2252(a)(4)(B) does not achieve the goal of limiting the reach of the statute to "activity that has a substantial effect on interstate commerce." 194 F.3d at 468. We recognized that the "jurisdictional element -- the r equirement that precursor materials like film or cameras moved in interstate commerce -- is only tenuously related to the ultimate activity regulated: interstate possession of child pornography." Id. at 473. W e noted that, "[a]s a practical matter, the limiting jurisdictional factor is almost useless here, since all but the most self-sufficient child pornographers will rely on film, cameras, or chemicals that traveled in interstate commerce and will ther efore fall within the sweep of the statute." Id. Nevertheless, we held that Congress was empowered to enact the statute under the Commerce Clause because "Congress rationally could have believed that intrastate possession of por nography has substantial effects on interstate commer ce." Id. at 468.[2]

_____

1. See United States Court of Appeals for the Third Circuit Internal Operating Procedure 9.1.

2. There are three broad categories of activity that Congress can regulate under the Commerce Clause: (1) the channels of interstate commerce; (2) the instrumentalities of interstate commerce; and (3) those activities having a substantial relation to interstate commerce. United States v. Lopez, 514 U.S. 549, 559 (1995). In Rodia , we found that categories (1) and (2) were not pertinent to our analysis and turned our attention to category (3), which was at the "heart of the matter." 194 F.3d at 473–474.

Galo argues that Rodia was incorr ectly decided because we ignored the reality that Congress had criminalized purely intrastate, local activity. However, despite Galo's argument to the contrary, we were well aware that the statute "criminaliz[ed] an activity that is not dir ectly linked to interstate commerce." Id. at 468. However, as we noted there, the fact that purely local activity is criminalized is not fatal to the statute.

> The precise question before us is whether it was within Congress's power under the Commerce Clause to enact 18 U.S.C. S 2254(a)(4)(B), which imposes criminal liability on individuals who possess child por nography that has not itself traveled in interstate commer ce as long as one of the materials from which the pornography was created . . . has so traveled.

Id. at 468. Rodia answers the inquiry in the affirmative and Galo's attack on the constitutionality of the statute is therefore to no avail.

His assertion that the statute is unconstitutional as applied to him is also without merit as our analysis in Rodia clearly shows that Congress could pr operly regulate intrastate possession of child pornography pr oduced by materials that had traveled in interstate commer ce.3 Consequently, we will affirm the judgment of conviction.

B. Sentence Enhancement Pursuant to 18 U.S.C. S 2251(d).

Galo's challenge to the district court's sentencing enhancement is more troubling. 18 U.S.C.S 2251(d) provides in relevant part:

> Any individual who violates . . . this section shall be fined under this title or imprisoned not less than ten (10) years nor more than twenty (20) years, but if such person has one prior conviction under this chapter[18 U.S.C. S 2251 et seq.], . . . or under the laws of any State relating to the sexual exploitation of children,

_____

3. As noted above, the camera and film that Galo used both traveled in interstate commerce.

> such person shall be fined under this title and imprisoned for not less than fifteen (15) years nor more than thirty (30) years . . . .

Galo's enhancement is based upon two guilty pleas he entered in state court in 1990. In January of that year Galo's niece told New Kensington, Pennsylvania police that Galo had been sexually abusing her from her pr eschool years up to fifth grade. According to the niece, the abuse initially consisted of vaginal touching, but it pr ogressed to oral sex and intercourse. The abuse stopped when the niece told her mother. However, she also told police that Galo had sexually abused her brothers. The police subsequently questioned her brothers, and they confir med that Galo had also sexually abused them.

Galo's older nephew, then age 18, told police that Galo had been sexually abusing him for the past six years. The abuse consisted of oral and anal sex, and touching of each other's genitals. Galo's younger nephew, then age 16, told the police that Galo had sexually abused him at various times from the time he was 6 to the time he r eached 13. That abuse also consisted of oral sex and touching of genitalia.

On February 16, 1990, Galo was charged in the Court of Common Pleas of Westmoreland County, Pennsylvania, with two counts of involuntary deviate sexual inter course, two counts of corruption of minors, two counts of endangering the welfare of children and four counts of indecent assault.

On March 16, 1991, Galo appeared befor e a state trial judge and pled guilty to corruption of minors, endangering the welfare of children and indecent assault. Charges of involuntary deviate sexual intercourse wer e dropped pursuant to a plea agreement. The court accepted the plea and sentenced Galo to one and one-half to thr ee years imprisonment. When Galo was finally released from custody on that sentence he began his parole. As a condition of that parole he was required to complete a sexual offender program and he was prohibited from r esiding in a home where minors were present. He was on parole when he became involved with Sheila.

The district court relied upon the transcript of Galo's guilty plea hearing in state court, the elements of the state offenses he pled guilty to, and the relevant proof offered by the state in its prosecution of Galo, and deter mined that Galo's prior state conviction "related to the sexual exploitation of children" for purposes of an enhancement under S 2251(d). However, in reaching that conclusion, the court necessarily focused on Galo's conduct, as opposed to the elements of the offenses he was convicted of in state court.4

Galo now argues that the district court incorr ectly concluded that he had been convicted of violating state laws "relating to the sexual exploitation of children," as required to enhance his sentence. He insists that the district court was required to follow a"categorical approach" in deciding whether the enhancement provisions of S 2251(d) applied. Under the "categorical approach," the

_____

4. As calculated by the U. S. Probation Office, Galo's total offense level was 28 and his criminal history category was II, yielding a guideline range for imprisonment of 87 months (7.25 years) to 108 months (9 years). Presentence Report ("PSR") atPP 29, 32, 64. However, the statutorily required minimum sentence for violating S 2251(a) is 120 months (10 years) for individuals who have never been convicted of any of the federal crimes specified in S 2251(d) or convicted of an offense relating to the sexual exploitation of childr en under the law of any state.
18 U.S.C. S 2251(d). The statutorily r equired minimum sentence for violating S 2251(a) is 180 months (15 years) for individuals who have one prior conviction for any of the federal crimes specified in S 2251(d) or one
prior conviction for an offense relating to the sexual exploitation of children under the law of any state. Id.  Pursuant to U.S.S.G. S 5G1.1(b), "[w]here a statutorily requir ed minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."

Section 2251(d) further provides that if a defendant has 2 or more convictions "under this chapter [18 U.S.C.S 2251 et seq.] or chapter 109A, or chapter 117, or under the laws of any State relating to the sexual exploitation of children, such person shall be . . . imprisoned not less than 30 years nor more than life." However, in the district court the parties agreed that although Galo pled guilty to multiple offenses, those prior offenses would amount to only one prior conviction for purposes of sentence enhancement under S 2251(d), because his pleas were entered simultaneously. App. at 149–151.

10

sentencing court can look only to the fact of conviction and the statutory definition of the prior offense. The court's analysis is not controlled by the conduct giving rise to the conviction. Taylor v. United States, 495 U.S. 575, 600-602 (1990).

In Taylor, the defendant conditionally pled guilty to being a convicted felon-in-possession of a firearm in violation of 18 U.S.C. S 922(g)(1). That plea subjected him to the sentencing enhancement contained in 18 U.S.C. S 924(e) which provides as follows:

> (1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court . . . for a violent felony . . . such person shall be fined not more than $25,000 and imprisoned not less than fifteen years. . . .
>
> (2) As used in this subsection--
>
>  . . . . .
>
> "(B) the term `violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that--
>
> "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> "(ii) is burglary [or other specified offenses] or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Id. at 578. Taylor conceded that his prior convictions for assault and robbery counted toward the enhancement because they involved the use of physical force against persons. However, he argued that the district court could not rely upon two burglary convictions in deciding if he qualified for an enhanced sentence under S 924(e). He insisted that under the law of the state where he was convicted (Missouri), his convictions "did not involve `conduct that presents a serious potential risk of physical injury to another.' " Id. at 579. The Court of Appeals for the Fifth Circuit affirmed the enhancement based upon its conclusion that "the word burglary inS 924(e)(2)(B)(ii)

11

means burglary however a state chooses to define it." Id. (internal quotation marks omitted).

The issue before the Supreme Court was whether a sentencing court applying S 924(e) "must look only to the statutory definitions of the prior offenses, or whether the court may consider other evidence concerning the defendant's prior crimes." 495 U.S. at 600. After carefully examining the legislative history, and noting that the text of the statute grounded the enhancement on prior "convictions" for specified crimes, the Court held that the enhancement focused the sentencing court's inquiry"on the elements of the statute of conviction, not [on] the facts of each defendant's conduct." Id. With one narrow exception not relevant to our analysis the Court concluded:

> the only plausible interpretation of S 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense.

Id., at 602. "The Court also noted that the "practical difficulties and potential unfairness of a factual approach are daunting [because] [i]n all cases where the Government alleges that the defendant's actual conduct fit the generic definition of burglary, the trial court would have to determine what that conduct was." Id., at 601.

Although a factual approach would be possible in some cases where the charging instrument disclosed the actual theories of the case as presented to the jury, it would often not be possible to discern the nature of a defendant's prior conduct. Application of the enhancement in such instances would therefore result in inequitable treatment from state to state or even within a given jurisdiction based only upon the specificity of the charging instrument or the availability of the jury instructions, or trial transcript. Such difficulties are avoided where a sentencing court applying the S 924(e) enhancement looks only to the elements of the prior offense of conviction as defined by state law.

This categorical approach has not been limited to the enhancement under S 924(e). In Roussos v. Menifee, 122 F.3d 159, 162-63 (3d Cir. 1997) we r elied, in part, on the

12

Taylor rationale and held that the Bureau of Prisons had erred when considering enhancement factors and not focusing on the elements of the offense of conviction in construing "convicted of a nonviolent offense" for purposes of awarding a sentence reduction under 18 U.S.C. S 3621(e)(2)(B).

The language of the relevant statute here is even clearer than the text of the statutes involved in Taylor and Roussos. As noted above, S 2251(d) applies when an individual has "one prior conviction . . . under the laws of any State relating to the sexual exploitation of children." As in Taylor, the language expressly refers to a "conviction," not to "conduct" relating to the sexual exploitation of children. In order to uphold the enhancement here, we would have to read S 2251(d) as applying when the defendant has "previously been convicted under the laws of any state based upon conduct relating to the sexual exploitation of children." The language of S 2251(d) does not fairly support that interpretation.

In his thoughtful dissent, Judge Garth reminds us that in United States v. Watkins, 54 F.3d 163 (3rd Cir. 1995), we noted that the enhancement contained in S 924(e) does allow a sentencing court to apply that enhancement based upon a defendant's actual conduct in certain instances. See Dissent at 28. In Watkins we stated:

> when the "statutory definition of the prior offense" is broad enough to permit conviction based on conduct that falls outside of the scope of S 924(e)(2)(B) [here, outside the scope of 18 U.S.C. S 2251(d)], it becomes necessary to look beyond the statute of conviction. Only in such cases may the sentencing court look to the facts of the particular case in order to determine whether the trier of fact necessarily found elements that would qualify the offense as a "violent felony" under S 924(e)(2)(B).

54 F.3d at 166. However, that pronouncement referred to the Supreme Court's discussion of situations where a state statute is so broad that it encompasses offenses that serve as predicates for enhancement under S 924(e), as well as offenses that do not. In Taylor, the Court held that the

13

burglary enhancement contained in S 924(e) applied whenever a defendant had a prior conviction for a crime that had the same elements as "generic" bur glary, no matter how the crime was labeled under state law. Taylor, 495 U.S. at 599-600. Accordingly, the Court concluded that

> a person has been convicted of burglary for purposes of a S 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structur e, with intent to commit a crime.

Id. at 599. When a given state statute defined burglary more narrowly than generic burglary (such as not requiring the intent to commit a felony or a violent crime following entry) there was clearly no problem as the prior conviction must, by definition, include the elements of generic burglary. However, some states define burglary to include unprivileged entry of a vehicle. In such cases the prior conviction would not necessarily satisfy the elements of generic burglary. However, in such a case, if the defendant had actually been convicted of entering a building, he/she would have committed a generic burglary even though the statute's definition included conduct that could not serve as an enhancement under S 924(e). The Court stated:

> A few States' burglary statutes, . . . define burglary more broadly, e.g., by eliminating the r equirement that the entry be unlawful, or by including places, such as automobiles and vending machines, other than buildings. . . . Also, there may be offenses under some States' laws that, while not called "burglary," correspond in substantial part to generic bur glary. . . . This question requires us to address a more general issue--whether the sentencing court in applying S 924(e) must look only to the statutory definitions of the prior offenses, or whether the court may consider other evidence concerning the defendant's prior crimes. The Courts of Appeals uniformly have held that S 924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying

14

those convictions. We find the reasoning of these cases persuasive.

Id. at 600 (citations omitted).

It was in this context that we made our pronouncement in Watkins.

Watkins argued that the prosecution's reliance upon documentary evidence to establish that his prior state convictions qualified as enhancements under S 924(e) failed to meet the government's burden of pr oof at sentencing. We rejected that argument because the uncontested facts in the presentence report established that W atkins' prior convictions were predicate offenses under S 924(e). We stated:

> Here, the information provided in the presentence report enabled the district court to ascertain with certainty the statutes of conviction and the statutes of conviction encompass only conduct that falls within the scope of S 924(e)(2)(B)(i) and (ii). . . . Watkins is forced to argue for a per se rule that certified copies of the judgments of conviction are requir ed in every case before a sentencing court may determine that the defendant's prior convictions are for "violent felonies" within the meaning of S 924(e)(2)(B). W e find no persuasive justification for such an inflexible rule and decline to adopt it.

Watkins, 54 F.3d at 167-8 (emphasis added).

However, our discussion in Watkins can not be divorced from the focus of the Supreme Court's inquiry in Taylor. There, the Court had to discern what Congress intended when it amended the applicable statute in 1986. When S 924(e) was originally enacted in 1984 it included burglary as a predicate offense for enhancing a sentence of one convicted of violating 18 U.S.C. S 922(g)(1) (a felon in possession of a firearm). However , "[b]urglary was defined in the statute itself as `any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense.' " T aylor, 495 U.S. at 581. The current version of S 924(e) was enacted into law when

15

Congress passed the Career Criminals Amendment Act of 1986. Id. at 577. Those amendments made thr ee changes in the original 1984 enactment. "This amendment .. . expanded the predicate offenses triggering the sentence enhancement from "robbery or bur glary" to "a violent felony or a serious drug offense"; it defined the term "violent felony" to include "burglary"; and it deleted the pre-existing definition of burglary." Id. 582. Thus, in Taylor, the Court had to examine the legislative history of the amendments to determine if Congress intended a substantive change in what constituted a predicate offense under S 924(e). The Court concluded that the omission did not mean that Congress intended to change the definition of burglary.

> The legislative history as a whole suggests that the deletion of the 1984 definition of burglary may have been an inadvertent casualty of a complex drafting process. In any event, there is nothing in the history to show that Congress intended in 1986 to r eplace the 1984 "generic" definition of burglary with something entirely different. Although the omission of a pre-existing definition of a term often indicates Congress' intent to reject that definition, we draw no such inference here.

Id. at 589-90 (citations omitted).

Having established that a burglary, as originally defined, remained a predicate offense, the Court held that sentencing courts must adopt the "categorical approach" in determining if a state conviction for bur glary constituted a "burglary" for purposes of S 924(e). As noted above, when a given state statute includes conduct as burglary that would not constitute "generic burglary," the sentencing court can only accomplish the required inquiry if itfirst determines if the prior conviction was tantamount to "generic burglary" as originally defined in S 924(e). Thus, in Watkins, we acknowledged that the sentencing court must "look beyond the statute of conviction" when a defendant has a prior conviction under a statute that labels conduct as a burglary that would traditionally not be defined as burglary (such as illegally entering of a vehicle with the intent to commit a crime). In that situation, the prior "burglary" conviction can only serve as a predicate of fense under

16

S 924(e) if the defendant's conduct constituted a "generic burglary." Otherwise, there was no conviction for "burglary" under S 924(e). Accordingly, our decision in Watkins does not allow a sentencing court to impose an enhancement under S 2251(d) based on conduct that did not result in a conviction for a crime relating to sexual exploitation of children, and the dissent's reliance upon our language in Watkins is misplaced.

We are similarly unpersuaded by the dissent's reliance upon United States v. Sweeten, 933 F .2d 765, 769 (9th Cir. 1991), and United States v. Barney. 955 F.2d 635 (10th Cir. 1992). See dissent at 27. In Sweeten, the district court refused to count a prior conviction for "bur glary of a habitation" in Texas as a predicate of fense under S 924(e) because Texas defined "habitation" to include vehicles. The sentencing court concluded that it was therefor e not a conviction for " `burglary' in a generic sense" under Taylor. Sweeten, 933 F.2d 767. The government appealed, and the Court of Appeals for the Ninth Circuit r eversed because the statute in question defined "habitation" to include "vehicles." Accordingly, the statute was limited to such vehicles as "trailers, campers, and mobile homes-- whose primary purpose is to serve as a dwelling and not as a mode of transportation." Id. at 770. Ther efore, the defendant's conviction for burglary of a habitation was consistent with "generic burglary," and the conviction constituted a predicate offense underS 924(e). In reaching this conclusion the court relied only upon the elements of the offense and did not allow an inquiry into the conduct that violated the Texas statute. Thus, contrary to the inference raised in Judge Garth's dissent, the court stated: "we agree that it would have been err or for the district court to inquire into the facts underlying Sweeten's Texas conviction." Id at 769.

Similarly, in Barney, the defendant had been convicted under a Wyoming statute that defined bur glary to include unauthorized entry into "a building, occupied structure or vehicle," with the intent of committing a crime. 955 F.2d at 638.5 The court of appeals upheld the sentencing court's

_____

5. The case actually involved two defendants. W e limit our discussion to the court's analysis of Trombley's prior conviction. The court did not

17

enhancement of the defendant's sentence because the transcript of the guilty plea colloquy from the prior burglaries established that he had illegally entered a building, not a vehicle. Therefore, his prior burglary convictions satisfied the elements of "generic burglary" under S 924(e). Again, however, the court stated the limits of the inquiry. The court stated:

> In determining whether a person has been convicted of a crime which may be counted toward enhancement under Taylor, a court must employ a"categorical approach," rather than inquire into underlying facts. This requires a comparison of the elements of the relevant state statute with the basic elements of burglary identified in the Taylor decision.

955 F.2d at 638 (citations omitted). The court's holding was based upon the fact that "Taylor allows `the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually r equired to find all the elements of generic burglary.' " Id. at 639 (quoting Taylor, 110 S.Ct. at 2160).

Our situation is quite different. As noted above, the statute that governs Galo's enhancement r equires a "prior conviction of . . . laws . . . relating to the sexual exploitation of children." Therefore the enhancement is governed by whether the law the defendant previously violated relates to "sexual exploitation of children." Section 2251(d) does not require a sentencing court to deter mine if the prior conviction satisfies the generic elements of a crime as does S 924(e). Rather, the sentencing court need only determine if the statute (not the conduct) the defendant was previously convicted of relates to the sexual exploitation of children. "Moreover, our conclusion is consistent with the practical considerations that guided the Court's analysis in Taylor. As the Court noted ther e, "the practical difficulties and potential unfairness of a factual appr oach are

_____

allow one of Barney's prior convictions to serve as a predicate offense because there was no indication from the guilty plea colloquy or indictment from the prior convition that Bar ney had the intent to commit a crime when he entered the "bur glarized" structures. The structures were open to the public. 955 F .2d at 640.

18

daunting." 495 U.S. at 601. We have pr eviously cautioned that "[a] case-by-case, fact specific appr oach [to applying an enhancement statute] . . . could force sentencing courts to hold mini-trials, hear evidence and witnesses and otherwise engage in a detailed examination of the specific facts involved in the prior offense," all of which "would be avoided with a categorical approach [that focuses on the elements of the prior offense]." United States v. Preston, 910 F.2d 81, 85 n.3 (3d Cir. 1990).

Section S 2251(d) incorporates the categorical approach because it focuses the sentencing court's attention on the statutory definition of a prior conviction. It is the elements of a given statute, not the conduct that violates it that determines if the statute relates to sexual exploitation of children.

We conclude, therefore, that the district court erred when it considered Galo's prior conduct in determining whether he was subject to the S 2251(d) enhancement. The court should have focused only on the statutory definitions of those prior convictions.

Accordingly, we must examine the statutory definitions of the crimes Galo was previously convicted of and determine whether they are state "laws . . . r elating to the sexual exploitation of children."

As recited earlier, Galo's state convictions were for two counts each of : (1) Corruption of Minors in violation of 18 PA. CONS. STAT. ANN. S 6301; (2)Endangering the Welfare of a Child in violation of 18 PA. CONS. STAT. ANN. S 4304; and (3) Indecent Assault in violation of 18 PA. CONS. STAT. ANN. S 3126(a)(1) and (a)(2).

Corruption of Minors is defined as follows:

> Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her par ole or any order of court, commits a misdemeanor of the first degree.

19

18 PA. CONS. STAT. ANN. S 6301 (emphasis added). It is readily apparent that although the statute can include conduct relating to the sexual exploitation of children, it pertains with equal force to conduct such as gambling, underage drinking or drug use. The statute is aimed at conduct of any nature that tends to corrupt children. It is broad enough to include allowing a minor to view an "R" rated video.

> In deciding what conduct can be said to corrupt the morals of a minor, the common sense of the community, as well as the sense of decency, pr opriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is r endered criminal by it.

Commonwealth v. Decker, 698 A.2d 99, 101 (Pa. Super. 1997) (internal quotation marks omitted); see also Commonwealth v. Tau Kappa Epsilon, 530 Pa. 416 (1992) (fraternities prosecuted for corrupting the morals of minors based upon underage drinking).

Endangering the Welfare of a Child is defined as follows:

> A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfar e of the child by violating a duty of care, protection or support.

18 PA. CONS. STAT. ANN. S 4304. The statute clearly relates to a breach of the duty of care rather than sexual abuse or exploitation. It includes such conduct as par ents refusing to obtain medically necessary treatment for a child based upon religious beliefs. See Commonwealth v. Barnhat, 497 A.2d 616, 623 (Pa. Super. 1985) ) (par ent prosecuted for refusing to obtain medical treatment for child defended charges of endangering welfare of child, and involuntary manslaughter by explaining "if I would go to a doctor I would be turning my back on my faith."). It also criminalizes such negligent parental conduct as leaving a plastic bag too close to a sleeping infant who subsequently suffocates. Commonwealth v. Fewell, 654 A.2d 1109 (Pa. Super., 1995), and intentional physical assaultive behavior of a nonsexual nature. Commonwealth v. V ining, 744 A.2d

20

310 (Pa. Super. 2000) (adult caregiver prosecuted for burns and beatings inflicted on toddler left in her car e).

Indecent assault is a much closer call, because it obviously relates to the sexual nature of an offender's conduct. However, it criminalizes, and r elates to, nonconsensual indecent touching regardless of the victim's age. Pennsylvania law establishes that this of fense is committed when

> [a] person who has indecent contact6 with the complainant or causes the complainant to have indecent contact with the person is guilty of indecent assault if: (1) the person does so without the complainant's consent; (2) the person does so by forcible compulsion;. . . .

18 PA. CONS. STAT. ANN. S 3126(a)(1) and (a)(2). Galo's conduct would have constituted a violation of this statute regardless of the age of his victims. Although a minor could be the victim of this, or either of Galo's other two state offenses, none of the statutory definitions of those three crimes establish a conviction under "laws r elating to the sexual exploitation of children."7

The government argues that applying the categorical approach would produce an "absur d result" because "the enhanced penalty provisions of 18 U.S.C. S 2251(d) would only apply to defendants convicted in states with statutes that are specifically titled `sexual exploitation of children,' or that use these terms in their statutory definitions." Government's Br. at 31. We disagree. The S 2251(d) enhancement would apply if a defendant had a prior state conviction for involuntary deviate sexual inter course as

_____

6. "Indecent contact" is defined in 18 PA. CONS. STAT. ANN. S 3101 as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desir e in either person."

7. The dissent's contention that "[a]ll three of the Pennsylvania statutes under which Galo was previously convicted ar e broad enough to include `sexual exploitation of children,' depending on the underlying facts, . . .", see dissent at 28, is really little mor e than an assertion that Galo was previously convicted of conduct relating to the sexual exploitation of children. This is not what the statute r equires.

21

defined under the law of Pennsylvania. That of fense imposes criminal liability for engaging "in deviate sexual intercourse8 with a complainant: . . . who is less than 13 years of age. . . ." 18 PA. CONS. STAT. ANN. S 3123(a)(6). The definition does not contain the term "sexual exploitation of children." Nevertheless, a prior conviction for this category of involuntary deviate sexual intercourse would subject a defendant to the S 2251(d) enhancement because the conviction would be for a crime relating to the sexual exploitation of children. Similarly, a prior conviction for statutory rape would establish a conviction "under the laws of any State relating to the sexual exploitation of children" and subject a defendant to the S 2251(d) enhancement.9 Congress intended to condition enhancement under S 2251(d) on precisely this kind of prior conviction rather than on generic convictions that relate to sexual exploitation of minors only because of the specific conduct of the accused. As the Supreme Court noted in Taylor, only in this way can the enhancement be applied in a manner that is both uniform and practical.

In sum, because Galo has not previously been convicted for violating a law relating to the sexual exploitation of children, the district court improperly applied the S 2251(d) enhancement to Galo's sentence.

IV.

For all of the above reasons, we reject Galo's constitutional challenge to SS 2251(a) and 2242(a)(4)(B). However, because none of Galo's prior state convictions were convictions "under the laws of any State relating to

_____

8. "Deviate sexual intercourse," under Pennsylvania statutory law, is defined as, inter alia, "[s]exual intercourse per os or per anus between human beings." 18 PA. CONS. STAT. ANN. S 3101. "Sexual intercourse [i]n addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." Id.

9. The Pennsylvania Crimes Code, in a subsection of the rape statute, imposes criminal liability on any individual who"engages in sexual intercourse with a complaint . . . [w]ho is less than 13 years of age." 18 PA. CONS. STAT. ANN. S 3121(a)(6).

the sexual exploitation of children," he is not subject to the S 2251(d) enhancement. Therefore, we will vacate Galo's sentence and remand for resentencing. 10

---

10. Although we hold that the specific enhancement in S 2251(d) does not apply, we do not suggest that the sentencing court ought to ignore that conduct in calculating an appropriate sentence under the Sentencing Guidelines. His prior conduct is clearly relevant to determining his sentence even though it is not be a predicate offense under S 2251(d).

23

GARTH, Circuit Judge, concurring in part and dissenting in part.

I am obliged to write separately because, even though I agree with the majority's disposition of Galo'sfirst three issues on appeal,1 I disagr ee strongly with its failure to recognize that the District Court's enhancement of Galo's sentence should be approved and, therefor e, affirmed.

Galo complains that his sentence was improperly enhanced by the District Court because, claims Galo, he did not suffer a state (Pennsylvania) conviction for sexually exploiting children.2 Unfortunately, the majority of this panel has agreed with him by narrowly construing 18 U.S.C. S 2251(d). My reading of case authority, particularly Taylor v. United States, 495 U.S. 575 (1990), and a common-sense reading of S 2251(d) and the relevant Pennsylvania statutes to which Galo pled guilty, as well as my review of Galo's plea colloquies and his pr esentence report, convince me otherwise. Moreover , I fear that the crabbed interpretation by the majority of the provisions of S 2251(d) would preclude sentence enhancements that are not only warranted but that Congress intended. Let me develop this point.

I.

Galo had been indicted in 1990 in Westmor eland County, Pennsylvania on a ten-count information which charged him with corruption of minors,3 endangering the welfare of

_____

1. Galo had claimed that Congress has not validly exercised its Commerce Clause authority in enacting 18 U.S.C.S 2251(a) and S 2252(a)(4)(B)--both of which pertain to the sexual exploitation of children and child pornography. As the majority so aptly holds--a holding with which I agree--our decision in United States v. Rodia, 194 F.3d 465 (3d Cir. 1999), cert. denied, 120 S.Ct. 2008 (2000), puts Galo's claims to rest.

2. The District Court enhanced Galo's sentence under 18 U.S.C. S 2251(d), sentencing him to 15 years, the minimum sentence with the enhancement. If there had been no enhancement, the range of sentence to which Galo was subject under the statute was ten to twenty years.

3. 18 Pa. C.S. S 6301.

children,[4] indecent assault,[5] and involuntary deviate sexual intercourse.[6] These of fenses had been committed against his two nephews--both of whom were minors. Galo pled guilty to all counts other than the involuntary deviate sexual intercourse counts, which were dismissed pursuant to a plea agreement after his pleas of guilty to the other eight counts. The information about these convictions is found in Galo's presentence report, to which Galo never objected. Through his pleas of guilty, Galo also admitted to the facts giving rise to the eight counts of the information in Westmoreland County.

Thereafter, in 1999, Galo was char ged in a two-count indictment in federal court with the production of material depicting the sexual exploitation of children. The majority, in its opinion, has detailed that indictment and has described Galo's prior sexual abuse of his niece fr om preschool years to fifth grade. As the majority opinion has noted, Galo's abuse of his niece included vaginal touching, oral sex, and intercourse. His earlier abuse of his nephews included oral and anal sex and touching their genitals.

These acts of Galo have never been denied, have never been contradicted, and, as I have recited above, Galo never objected to their inclusion in the presentence report that was prepared in connection with his federal indictment. Indeed, the plea colloquies conducted both by the District Court judge and by Judge Ackerman in the Court of Common Pleas of Westmoreland County not only flesh out the actions taken by Galo relating to his explicit sexual conduct with his nephews and niece, but also infor m Galo in great detail of the criminal consequences to which he was subject in terms of sentence for those actions.

I stress this point because, as I understand the majority opinion, it holds that, despite Galo's explicit admissions of his acts through his pleas of guilty, the statutory definitions of the crimes of which Galo was convicted are claimed not to be specifically related to the sexual

_____

4. 18 Pa. C.S. S 4304.

5. 18 Pa. C.S. S 3126.

6. 18 Pa. C.S. S 3123.

25

exploitation of children and so, says the majority, the District Court improperly applied the S 2251(d) enhancement to Galo's sentence. Let me explain why I believe the majority was 180 degrees of f the mark in this conclusion.

II.

First, I believe that the majority has erred in interpreting the term "relating to" as narr owly as it did. Second, the majority has failed to recognize that the gravamen of the Supreme Court's decision in Taylor v. United States, 495 U.S. 575 (1990), was that no court should be called upon to conduct fact finding with respect to the prior state indictments, nor should sentencing courts ignor e undisputed facts in connection with prior state convictions. Third, the majority has also failed to r ecognize that this Court and several of our sister Circuits have interpreted Taylor to permit sentencing courts to review prior guilty pleas and the descriptions of prior convictions in presentence reports in order to deter mine the nature of a prior conviction for sentencing enhancement purposes. Thus, the sentencing court is not confined to the mechanistic reading of a statute which, as the majority apparently contends, must contain the r elevant "magic terms" (in our case, "sexual exploitation of children"). Rather, as both Taylor[7] and the cases I discuss below instruct us, we can look beyond the words of the statute giving rise to the enhanced sentence.

III.

Though the Supreme Court intended to for eclose the need for mini-trials for sentencing courts to deter mine the elements of a prior conviction, because it did not desire "the sentencing court to engage in an elaborate factfinding

_____

7. While I agree with my colleagues that Taylor does prescribe a "categorical approach," which would appear to restrict the sentencing court to look only at the fact of prior conviction and the statutory definition of the prior offense, Taylor in fact goes further, as I point out
here, and as the cases which have interpr eted Taylor have held.

26

process regarding the defendant's prior offenses," Taylor, 495 U.S. at 601, it by no means prohibited sentencing courts from determining the elements of prior convictions by reference to admissions through guilty pleas and to unambiguous documents to which the defendant did not object, such as indictments and presentence r eports.

Several Circuit courts have interpreted the Supreme Court's decision in Taylor. In United States v. Sweeten, in which the district court had enhanced the defendant's sentence under 18 U.S.C. S 924(e) based on, inter alia, a Texas conviction following a guilty plea for burglary of a habitation, the Ninth Circuit explained: "T o say, as Taylor clearly does, that a sentencing court may not inquir e into the underlying facts of a prior conviction is not to say that the original judgment and corresponding criminal statute are the only materials that a sentencing court may or should consider." 933 F.2d 765, 769 (9th Cir. 1991).

Accordingly, the Ninth Circuit held in Sweeten that it was proper to consider the defendant's plea of guilty to the Texas conviction and his indictment, because "[c]onsideration of these additional documents, when proffered by the government at sentencing, does not require any searching inquiry into the underlying facts of a defendant's conviction." 933 F.2d at 769. Therefore, held the Ninth Circuit, "it is error for a district court . . . to restrict its consideration to the original judgment of conviction and corresponding criminal statute if also presented with documentation or judicially noticeable facts that clearly establish that the conviction is a pr edicate conviction for enhancement purposes." Sweeten , 933 F.2d at 769-70.

The Tenth Circuit considered a similar issue in connection with a S 924(e) sentencing enhancement in United States v. Barney. 955 F.2d 635 (10th Cir. 1992). The Court held that:

> where enhancement is sought on the basis of a conviction obtained through a guilty plea, the sentencing court may look to the underlying indictment or information and the text of the guilty plea to determine whether the defendant was char ged with

and admitted conduct which falls without question within the ambit of Taylor's generic definition.

955 F.2d at 639.

Finally, in United States v. Watkins, this Court considered application of the S 924(e) sentencing enhancement in a case where the defendant had previously been convicted of five violent felonies and had argued that his sentence should not have been enhanced without requiring the Government to produce a certified copy of each prior judgment of conviction. 54 F.3d 163 (3d Cir . 1995). After analyzing Taylor, Judge Stapleton of our Court held that these certified copies of judgments of conviction were not required to establish that Watkins' prior convictions were for violent felonies, stating that (just as in Galo's case):

> when the "statutory definition of the prior of fense" is broad enough to permit conviction based on conduct that falls outside of the scope of S 924(e)(2)(B) [here, outside the scope of 18 U.S.C. S 2251(d)], it becomes necessary to look beyond the statute of conviction. Only in such cases may the sentencing court look to the facts of the particular case in order to determine whether the trier of fact necessarily found elements that would qualify the offense as a "violent felony" under S 924(e)(2)(B).

54 F.3d at 166. Of even greater significance, we noted that "[i]t is well established in this cir cuit, and all others, that a sentencing court may rely on the facts set forth in the presentence report when their accuracy is not challenged by the defendant." Watkins, 54 F .3d at 166-67.

IV.

Applying Taylor and its progeny to this case, I would hold that the sentencing court properly looked at the state court plea colloquy to determine whether the prior convictions were "relating to the sexual exploitation of children." All three of the Pennsylvania statutes under which Galo was previously convicted are broad enough to include "sexual exploitation of children," depending on the underlying facts, as set forth in the state court information, Galo's two guilty

28

pleas, and the federal presentence report. Indeed, the majority readily concedes that violations of these statutes could include sexual exploitation of children, (See Maj. Op. at 19-20), but inexplicably does not extend this r easoning to examine and report upon the underlying char ging documents, as instructed in Taylor and in our precedent in Watkins.

18 Pa. C.S. S 6301, "Corruption of minors," provides: "Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age . . . commits a misdemeanor of the first degree." 18 Pa. C.S. S 6301(a)(1). As the majority points out, the phrase "by any act" clearly"can include conduct relating to the sexual exploitation of children," in addition to other conduct. (Maj. Op. at 19-20.)

18 Pa. C.S. S 4304, "Endangering welfar e of children," provides that "[a] parent, guar dian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, pr otection or support." 18 Pa. C.S. S 4304(a). Such a duty of care is certainly violated by sexually exploiting the child.

Finally, 18 Pa. C.S. S 3126, "Indecent assault," provides that "[a] person who has indecent contact with the complainant or causes the complainant to have indecent contact with the person is guilty of indecent assault if[ ] the person does so without the complainant's consent[or] the person does so by forcible compulsion." 18 Pa. C.S. S 3126(a)(1) and (2). By its language ("indecent contact"), this statute manifestly concerns sexual exploitation, as the majority admits, stating that "it obviously r elates to the sexual nature of an offender's conduct," (Maj. Op. at 21), and the sexual conduct obviously may involve a minor , as the statute has no age restriction.8

_____

8. The majority has characterized the Pennsylvania statute proscribing indecent assault as "a much closer call." It r ecognizes that the statute criminalizes conduct such as Galo's nonconsensual indecent touching of his nephews and admits that Galo's conduct would have constituted a violation of this statute regardless of the age of his victims. Then, unaccountably, it states, "[a]lthough a minor could be the victim of this, or either of Galo's other two offenses, none of the statutory definitions of
those three crimes establish a conviction under`laws relating to the sexual exploitation of children.' " (Maj. Op. at 21.)

29

Because all of the Pennsylvania statutes under which Galo was convicted include "sexual exploitation of children" and are overbroad, the District Court properly went "beyond the mere fact of conviction," Taylor, 495 U.S. at 602, in deciding to apply the S 2251(d) sentencing enhancement. As I have demonstrated, the Ninth and Tenth Circuits have permitted district courts to look at the underlying guilty pleas under Taylor, and this Court has held in Watkins that the presentence report may be considered in a sentence-enhancing context as well. I have reviewed Galo's state court plea colloquy, his plea colloquy in District Court, and the presentence report in this case, none of which, if consulted by the majority, have been discussed in its opinion, and I cannot understand how the Government's position that Galo had a prior conviction relating to the sexual exploitation of children can be rejected.

V.

Let me revisit the relevant proceedings in the Court of Common Pleas and in the District Court for a moment. In the plea colloquy in state court, the state court judge explained: "Now I'm going to explain the counts to which you will be pleading guilty. And you will notice that this is what the Commonwealth would be required to prove if you pled not guilty. This is what you are admitting by pleading to these charges." He then outlined four elements that the Commonwealth would have to prove before Galo could be convicted of the two counts of corruption of minors, 18 Pa. C.S. S 6301: 1) "that Jerry Galo was a child under eighteen years of age"; 2) "that at the time you were over eighteen years of age"; 3) "that you engaged in indecent contact with Jerry Galo"; and 4) "that that contact corrupted or tended to corrupt his morals." As to the second count of corruption of minors, the government "would have to prove those same elements in regard to Scott Galo." As the state court judge explained corruption of minors to Galo, "indecent contact"9

_____

9. I do not believe that the majority would dispute that "indecent contact" qualifies as "sexual exploitation." The majority points out that this term is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire in either person." (Maj. Op. at 21 n.6 (quoting 18 Pa. C.S. S 3101).)

30

was an essential element of the offense and an element to which Galo pled guilty. Galo, through his plea of guilty, admitted these facts and elements.

The state court judge set forth three elements for the two counts of endangering the welfare of childr en, 18 Pa. C.S. S 4304: 1) "that Jerry Galo was under eighteen years of age"; 2) "that you owed a duty of care, protection or support to him"; and 3) "that you violated that duty and endangered his welfare by having indecent contact with him." The state court judge stated that "[t]he same elements would have to be proven in count ten but in regar d to Scott Galo." Once again, Galo pled guilty to two counts of endangering the welfare of a child, for which "indecent contact" was an element of the offense. Galo, through his plea of guilty, admitted these facts and elements.

Finally, the state court judge explained that indecent assault, 18 Pa. C.S. S 3126, has two elements: 1) "that you had indecent assault or contact with another person and that person was not your spouse"; and 2) "that the contact was made without that person's consent." The state court judge explained that "[t]he person referred to in count four is Jerry Galo" and "[t]he parallel char ge is at count nine with regard to Scott Galo," both of whose status as children would have to be proven with respect to the counts of corruption of minors and endangering the welfar e of children. Galo, through his plea of guilty, admitted these facts and elements.

By the terms of the plea colloquy, Galo pled guilty to these eight counts in state court involving "indecent contact," i.e., "sexual exploitation," with children. Additionally, the presentence report described Galo's state court conviction under prior convictions. The pr esentence report stated that Galo was charged in state court after his niece informed the New Kensington police that Galo had been sexually abusing her brothers (his nephews), and the police interviewed the two nephews. According to the presentence report and as I noted earlier , the abuse of the elder nephew "consisted of oral and/or anal sex and touching of each other's penis," and the abuse of the younger nephew "consisted of touching each other's penis and later of oral sex."

31

These charges have never been contradicted, and Galo's admissions have never been denied. This case does not require judicial fact finding or mini-trials, nor does it require a review of subjective, disputable evidence of Galo's actions to justify the enhanced sentence. These uncontradicted charges and Galo's admissions are integral to Galo's state court convictions and leave no uncertainty as to the content of Galo's prior convictions. They each relate to sexual exploitation of childr en. Thus we do not encounter the problem foreseen by the Supr eme Court in Taylor when it expressed concer n about adding another level of fact finding to the sentencing pr oceedings.

VI.

Because of the broad nature of the Pennsylvania statutes under which Galo was convicted, the District Court properly conducted further inquiry under T aylor and determined that, in Galo's case, the of fenses to which he pled guilty in state court related to "sexual exploitation of children." The District Court's decision to apply the sentencing enhancement to Galo's sentence was well in line with Supreme Court precedent and pr ecedent from this and other Circuits. Accordingly, I respectfully dissent from the majority's failure to affirm the District Court's enhanced sentence of Galo.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit