11-2206-cr
United States v. Beardsley

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————————

August Term, 2011

(Argued: May 15, 2012     Decided: August 27, 2012)

Docket No. 11-2206-cr

————————————

UNITED STATES OF AMERICA,

*Appellee*,

— v. —

WAYNE BEARDSLEY,
AKA Sealed Defendant, AKA Wayne S. Beardsley,

*Defendant-Appellant.*

————————————

B e f o r e:

NEWMAN, STRAUB, and LYNCH, *Circuit Judges*.

————————————

Defendant-appellant challenges the district court's application of a fifteen-year

mandatory minimum sentence under 18 U.S.C. § 2252A(b)(1), which applies to

defendants convicted of certain federal child pornography offenses who have a prior

conviction "under the laws of any State relating to aggravated sexual abuse, sexual abuse,

or abusive sexual conduct involving a minor or ward."  He argues that the district court

erred in using the "modified categorical approach" to determine the facts underlying his prior state conviction for endangering the welfare of a child. He asserts that the district court should have used only the "categorical approach," under which his prior state conviction indisputably does not qualify as a § 2252A(b)(1) predicate offense. We agree, and therefore vacate his sentence and remand to the district court for resentencing.

VACATED AND REMANDED.

---

JAMES P. EGAN (Lisa A. Peebles, Melissa A. Tuohey, *on the brief*), Office of the Federal Public Defender, Syracuse, New York, *for Defendant-Appellant*.

PAULA RYAN CONAN, Assistant United States Attorney (Lisa M. Fletcher, *on the brief*), *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, New York, *for Appellee*.

---

GERARD E. LYNCH, *Circuit Judge*:

Defendant-appellant Wayne Beardsley appeals from a judgment of conviction entered in the Northern District of New York (Glenn T. Suddaby, *Judge*) following his plea of guilty to knowingly receiving and possessing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(a)(5)(B). The district court sentenced Beardsley to fifteen years in prison, the mandatory minimum sentence established by 18 U.S.C. § 2252A(b)(1), which applies to defendants convicted of certain federal child pornography offenses who have a prior conviction "under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or

ward."  On appeal, Beardsley argues that the district court erred in employing the "modified categorical approach" to analyze the facts underlying his prior state conviction for endangering the welfare of a child, and that under the proper standard – the "categorical approach" – his prior state conviction does not qualify as a § 2252A(b)(1) predicate offense.  We agree, and therefore vacate his sentence and remand to the district court for resentencing.

**BACKGROUND**

I.      Federal Offense of Conviction

On December 14, 2009, Beardsley, then age 42, went to the library at the Cayuga Community College in Auburn, New York, where he was enrolled as a student.  After he checked out one of the library's loaner laptop computers, #13, he took it to a library carrel and began searching the Internet for pornographic images of young girls.  He visited several child pornography websites and saved links to some of them in a "favorites" folder on the computer labeled with his own name.  When the battery in laptop #13 battery began to die, Beardsley exchanged that laptop for a different one, #8, which he used until the library closed for the day.

The following day, Beardsley returned to the library and asked to check out laptop #13 again so that he could visit the websites he had saved in his "favorites" folder.  Once again, he used that laptop to search for and view pornographic images of young girls.  When laptop #13's battery began to die, he exchanged it for another laptop, #7, and continued visiting child pornography websites.

3

While Beardsley was using laptop #7, library staff noticed that laptop #13, which Beardsley had just checked back in, was still running. In shutting down laptop #13, a library staff member saw images of naked children on the computer's screen and alerted campus police, who in turn called the town's police department and reported that Beardsley was viewing child pornography in the community college library. Police officers arrived at the library and approached Beardsley. He admitted that he had been looking at "porn" on the library's laptops. An on-the-scene forensic examination of laptop #13 established that it had been used to view numerous sexual images of girls who appeared to be under the age of 16. The police took laptops #13 and #7 into evidence and transported Beardsley to the Auburn Police Department to be interviewed. At the station, he provided a written statement admitting that he had used the library's laptops as described above. Subsequent forensic searches of both laptops confirmed Beardsley's statement.

Federal authorities arrested Beardsley in January 2010. A federal grand jury subsequently returned a two-count indictment charging him with one count each of knowingly receiving child pornography, 18 U.S.C. § 2252A(a)(2)(A), and knowingly possessing and accessing child pornography with intent to view, 18 U.S.C. § 2252A(a)(5)(B). The indictment included a "Prior Conviction Allegation":

> On or about May 11, 2006, in Auburn (New York) City Court, WAYNE BEARDSLEY entered a plea of guilty to the crime of Endangering the Welfare of a Child, a class A misdemeanor, in violation of New York Penal Law Section 260.10(1), which makes it unlawful to act in a manner likely

4

to be injurious to the physical, mental or moral welfare of a child less than seventeen years old. The basis for the conviction, as stated in the accusatory instrument, is that the defendant did subject an 18 month old female child to sexual contact.

The indictment asserted that Beardsley's prior state conviction constituted a "prior final conviction relating to the aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward" under § 2252A(b)(1), triggering that statute's mandatory sentence enhancement. In addition, on May 10, 2010, the government filed a "Special Information Regarding Prior Conviction," which again alleged that Beardsley's prior state conviction qualified as a predicate offense under § 2252A(b)(1), and "results in increased potential punishment" for Beardsley's federal offense.

Beardsley moved to strike or dismiss the indictment's prior conviction allegation and the special information, arguing that "[b]ecause nothing in the New York statute" under which he had been previously convicted, N.Y. Penal Law § 260.10(1), "requires actual sexual activity, it does not categorically fall within the scope of § 2252A(b)," and thus the federal sentence enhancement should not apply.

The district court denied Beardsley's motion. The court agreed with Beardsley that his prior state conviction for endangering the welfare of a child was not *categorically* a qualifying offense under § 2252A(b)(1). However, the court concluded that because "the full range of conduct" covered by the state statute does not fall within the meaning of § 2252A(b)(1) – or, in other words, because "the state statute is broader than the federal definition of a predicate offense" – the court would employ the "modified categorical

5

approach" to analyze Beardsley's state conviction.  That approach would allow the district court to review certain documents from Beardsley's prior state conviction to determine whether the "conduct" underlying that conviction "fits within the federal definition of the offense" of "aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor."  18 U.S.C. § 2252A(b)(1).

As discussed in the following section, the state-court documents available to the district court under the modified categorical approach established that Beardsley's conviction for endangering the welfare of a child was based on two incidents in 2001 when Beardsley had sexual contact with a victim who was "18 months of age at the time." After having reviewed these documents, the district court concluded that they "allow[ed] for no reasonable conclusion other than that" Beardsley's prior state conviction for endangering the welfare of a child was under a law "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor," and thus qualified as a federal predicate offense.  See 18 U.S.C. § 2252A(b)(1).

Pursuant to a written plea agreement preserving his right to appeal the district court's denial of his motion to strike or dismiss the indictment's prior conviction allegation and the special information, Beardsley pled guilty to both counts of the indictment.  The district court sentenced him to fifteen years in prison, the mandatory minimum sentence provided by § 2252A(b)(1), to be followed by a lifetime term of supervised release, and a $200 special assessment.  Beardsley timely appealed.

6

II.     State Offense

The following facts are drawn from the state-court documents reviewed by the district court in connection with Beardsley's prior conviction for endangering the welfare of a child.

In 2005, when Beardsley's daughter was five years old, Child Protective Services in Seneca County, New York, received a hotline complaint that she had touched another child inappropriately, and that she had learned the behavior from her father.  Beardsley agreed to be polygraphed by the sheriff's department about inappropriately touching his daughter.  He failed the examination.  He then agreed to a voluntary interview at the sheriff's station, where, in a written statement, he admitted to having inappropriately touched his daughter's clitoris on two occasions in 2001 while he was changing her diaper.  The Cayuga County District Attorney's Office charged Beardsley with two counts of felony sexual abuse.  However, in May 2006, in Auburn (New York) City Court, pursuant to a an agreement between Beardsley and the county, Beardsley pled guilty to the reduced charge of "Endangering the Welfare of a child, committed on or about May 17, 2001."  The New York offense of endangering the welfare of a child, N.Y. Penal Law § 260.10, is a class A misdemeanor.

The accusatory instrument to which Beardsley pled guilty was an "Information/Complaint" filed in Auburn City Court that charged that

> on or about the 17th day of May, 2001, . . . DEFENDANT
> DID intentionally, knowingly, unlawfully COMMIT THE
> misdemeanor of ENDANGERING THE WELFARE OF A

7

CHILD contrary to the provisions of Section 260.10, subdivision 1 of the PENAL Law of the State of New York. . . .

To wit: [Beardsley] did subject the victim, 18 months of age at the time of the incident, to sexual contact. All contrary to the provisions of the statute in such case made and provided.

Basis for deponent's information and grounds for belief being the police investigation and the affidavits of the defendant . . . attached hereto and made a part thereof.

The state court, "after reviewing the complaints," made "a finding that the facts also support the misdemeanor offenses, and so amends the complaint – the complaints, to charge the Defendant with misdemeanor offenses." The subsequent plea colloquy was brief:

THE COURT: . . . I will read to you the complaint on a – read you the complaint, and ask you whether the allegations are accurate, to the best of your recollection. . . .
The complaint alleges, Mr. Beardsley, that on or about May 17th, of 2001, you did engage in conduct which endangered the welfare of a young child by having inappropriate contact. Is that accurate?

THE DEFENDANT: Yes.

THE COURT: I will accept that.

The state court accepted Beardsley's plea to the charge of endangering the welfare of a child "in full satisfaction of the pending charges," and sentenced him to three years' probation, conditioned upon successful completion of a sex offender treatment program, and a $90 fine.

8

## DISCUSSION

We review de novo all questions of law relating to the district court's application of a federal sentence enhancement. United States v. Rosa, 507 F.3d 142, 151 (2d Cir. 2007). We "apply clear error review to a district court's factual findings regarding the nature of a prior offense," United States v. Brown, 629 F.3d 290, 293 (2d Cir. 2011), or "nature of the [prior] conviction," United States v. Houman, 234 F.3d 825, 827 (2d Cir. 2000). But questions that "concern the district court's authority to make a factual finding about the nature of the conviction . . . are . . . questions of law." Rosa, 507 F.3d at 151 n.8. "The government bears the burden of showing that a prior conviction counts as a predicate offense for the purpose of a sentencing enhancement." United States v. Savage, 542 F.3d 959, 964 (2d Cir. 2008).

New York's Endangering the Welfare of a Child statute provides, in pertinent part:

> A person is guilty of endangering the welfare of a child when:
>
> 1. He or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health . . . .

N.Y. Penal Law § 260.10(1).

One of the sentence-enhancement provisions of 18 U.S.C. § 2252A, in turn, provides that a person convicted under the statute of certain federal child pornography offenses "shall be fined under this title and imprisoned not less than 5 years and not more than 20 years, but, if such a person has a prior conviction . . . under the laws of any State

9

relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, . . . such person shall be fined under this title and imprisoned for not less than 15 years nor more than 40 years."  18 U.S.C. § 2252A(b)(1).

On appeal, Beardsley argues that his prior New York state conviction for endangering the welfare of a child is not a predicate offense under § 2252A(b)(1), and that the district court therefore erred in subjecting him to the statute's fifteen-year mandatory minimum sentence.  First, he argues that the district court should not have used the "modified categorical approach" to analyze his state conviction because that approach is used only "to identify under which one of several provisions" of state law "a defendant was convicted when the predicate is divisible" into qualifying and non-qualifying offenses.  Appellant's Br. 9.  He contends that because New York's Endangering the Welfare of a Child statute is merely broad, and is not divided into subsections or separately listed offenses, some of which would qualify as predicates under § 2252A(b)(1) and others of which would not, the district court should not have resorted to analyzing the underlying documents related to his state conviction.  Instead, he contends, the district court should have limited itself to the "categorical approach" – under which, as both parties agree, Beardsley's state conviction would not trigger the § 2252A(b)(1) sentencing enhancement.

Second, Beardsley argues that even if application of the modified approach was permitted here, his prior state conviction still does not fall within the scope of § 2252A(b)(1) because the documents reviewed by the district court do not demonstrate

10

that his "plea necessarily rested on the fact identifying the conviction as a predicate offense." Appellant's Br. 10 (internal quotation marks omitted). Third, and relatedly, he argues that because at his state-court allocution he admitted only to "inappropriate contact" with a minor, rather than to a sex offense, § 2252A(b)(1) does not apply. Id. at 19-22.

We need not reach Beardsley's second and third arguments, however, because we agree with his first. The district court erred by applying the modified categorical approach to Beardsley's prior state conviction for endangering the welfare of a child. Under existing Supreme Court precedent, the modified categorical approach is appropriate only where a statute is divisible into qualifying and non-qualifying offenses, and not where the statute is merely worded so broadly to encompass *conduct* that might fall within with the definition of the federal predicate offense – here, "aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward," 18 U.S.C. § 2252A(b)(1) – as well as other conduct that does not. Where a statute of prior conviction is merely broad, but does not comprise separate offenses, some of which qualify as federal predicates and others of which do not, we conclude that § 2252A(b)(1) limits sentencing courts to the traditional, strict categorical approach. New York's Endangering the Welfare of a Child statute, N.Y. Penal Law § 260.10(1), is merely broad, not divisible. Accordingly, because endangering the welfare of a child is not categorically a state law "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward," 18 U.S.C. § 2252A(b)(1), Beardsley is not subject to § 2252A(b)(1)'s fifteen-year mandatory minimum sentence.

I.       The Categorical and "Modified Categorical" Approaches

In determining whether a prior conviction can serve as a predicate offense for a federal sentence enhancement, courts generally take a categorical or modified categorical approach.[1]  Under the categorical approach, "we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion," Begay v. United States, 553 U.S. 137, 141 (2008), whereas under the modified categorical approach we may consider facts underlying the prior conviction if they are based upon "adequate judicial record evidence" – limited, in the context of guilty pleas, to the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented," Shepard v. United States, 544 U.S. 13, 16, 20 (2005).

We have not had occasion to decide whether and under what circumstances § 2252A(b)(1) permits a modified categorical analysis of a prior state conviction. Accordingly, this case presents a question of first impression for our Court.  However, in answering that question, we are guided by the Supreme Court's application of the categorical and modified categorical approaches in other contexts, by our own analogous precedents, and by the approaches of our sister circuits.

---

[1] In limited contexts, including under certain immigration statutes, courts may take a non-categorical, "circumstance-specific" approach, which permits a roving inquiry into the facts of a prior conviction without regard to the elements of the statute of conviction.  See, e.g., Nijhawan v. Holder, 557 U.S. 29, 34-36 (2009).  The non-categorical approach is not at issue in this case.

12

A.  The Supreme Court's Approach

The Supreme Court's current framework for determining whether a prior conviction falls within a federal sentence-enhancing provision traces its origins to Taylor v. United States, 495 U.S. 575 (1990).  There, the Court considered whether the defendant's prior burglary conviction was a "violent felony" under a sentence-enhancement provision of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  The defendant had been previously convicted under a state law that defined burglary more broadly than the generic definition of the crime – that is, a crime having "the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."  Taylor, 495 U.S. at 599.  Some states, the Court noted, defined burglary "by eliminating the requirement that the entry be unlawful, or by including places, such as automobiles and vending machines, other than buildings." Id.  The Court held that where a defendant was convicted under a state statute that defines burglary more broadly than the generic definition, courts should take a "formal categorical approach," rather than a "factual approach," to determine whether the defendant had committed burglary for purposes of the sentence enhancement.  Id. at 600-02.  "[T]he only plausible interpretation" of this sentence enhancement was that "it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense."  Id. at 602.

The Court offered three main explanations for this conclusion.  First, the ACCA sentencing statute "refers to 'a person who . . . has three previous convictions' for – not a

person who has committed – three previous violent felonies or drug offenses," and

"defines 'violent felony' as any crime punishable by imprisonment for more than a year

that 'has as an element' – not any crime that, in a particular case, involves – the use or

threat of force." Id. at 600. The Court concluded that, "[r]ead in this context, the phrase

'is burglary' . . . most likely refers to the elements of the statute of conviction, not to the

facts of each defendant's conduct." Id. at 600-01. Second, the Court noted that "the

legislative history of the enhancement statute shows that Congress generally took a

categorical approach to predicate offenses," because "no one suggested that a particular

crime might sometimes count towards enhancement and sometimes not, depending on the

facts of the case," and had Congress "meant to adopt an approach that would require the

sentencing court to engage in an elaborate factfinding process regarding the defendant's

prior offenses, surely this would have been mentioned somewhere in the legislative

history." Id. at 601. Third, the Court described "the practical difficulties and potential

unfairness of a factual approach." Id. Among other things, the Court pointed out that

"[i]n all cases where the Government alleges that the defendant's actual conduct would fit

the generic definition of burglary, the trial court would have to determine what that

conduct was." Id. In addition, the Court noted that a factual approach would create

special problems in the context of guilty pleas:

> [I]n cases where the defendant pleaded guilty, there often is
> no record of the underlying facts. Even if the Government
> were able to prove those facts, if a guilty plea to a lesser,
> nonburglary offense was the result of a plea bargain, it would

14

seem unfair to impose a sentence enhancement as if the
defendant had pleaded guilty to burglary.

Id. at 601-02.

Finally, the Taylor Court recognized a subset of cases where the categorical

approach might permit courts to engage in some factual inquiry:

> This categorical approach, however, may permit the
> sentencing court to go beyond the mere fact of conviction in a
> narrow range of cases where a jury was actually required to
> find all the elements of generic burglary. For example, in a
> State whose burglary statutes include entry of an automobile
> as well as a building, if the indictment or information and jury
> instructions show that the defendant was charged only with a
> burglary of a building, and that the jury necessarily had to
> find an entry of a building to convict, then the Government
> should be allowed to use the conviction for enhancement.

Id. at 602. This exception has come to be known as the "modified categorical approach."

The modified categorical approach grew out of a recognition that the categorical

approach presented a problem in cases where the statute of prior conviction covers

multiple subjects. Since state and federal criminal statutes are written in various styles,

and are not always limited to single subjects, the categorical approach, strictly applied,

would often make it impossible to apply the enhancement even when it is apparent that it

should be applicable.

In Shepard v. United States, 544 U.S. 13 (2005), the Court applied the modified

categorical approach to cases where a prior conviction rests on a prior guilty plea rather

than on a jury verdict. The Court held that a sentencing court seeking "to determine

whether an earlier guilty plea necessarily admitted, and supported a conviction for,

15

generic burglary" is "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Id. at 16. The Court emphasized that Taylor created only a narrow exception to the strict categorical approach – that is, the general rule that the ACCA bars sentencing courts "from delving into particular facts disclosed by the record of [prior] conviction." Id. at 17; see also id. at 20-21. The Court affirmed the "heart of the decision" in Taylor, id. at 23, and made clear that the ACCA created a "demanding requirement" on the government to show "that a prior conviction necessarily involved (and a prior plea necessarily admitted) facts equating to generic burglary." Id. at 24 (internal quotation marks omitted).

In subsequent cases, the Court has continued to recognize that the modified categorical approach is the exception in ACCA cases, and that the categorical approach is the general rule. In James v. United States, 550 U.S. 192 (2007), the Court stated that courts must use the categorical approach to determine whether a prior state conviction for attempted burglary was a predicate offense under the ACCA. Id. at 201-02. The Court, reviewing Taylor and Shepard, reiterated that under the ACCA, courts "look only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction. That is, we consider whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." Id. at 202 (internal quotation marks and citations omitted).

16

Similarly, in <u>Chambers v. United States</u>, 555 U.S. 122 (2009), the Court

considered whether the defendant's prior state conviction for failure to report to a local

prison for weekend confinement qualified as a "violent felony" under the ACCA because

the conviction "involves conduct that presents a serious potential risk of physical injury to

another." <u>Id</u>. at 124, quoting 18 U.S.C. § 924(e)(2)(B). The Court concluded that it did

not. The Court first considered "the classification of the crime":

> In ordinary speech, words such as "crime" and "felony" can refer not only to a generic set of acts, say, burglary in general, but also to a specific act committed on a particular occasion, say, the burglary that the defendant engaged in last month. We have made clear, however, that, for purposes of ACCA's definitions, it is the generic sense of the word "felony" that counts. The statute's defining language, read naturally, uses "felony" to refer to a crime as generally committed. And by so construing the statute, one avoids the practical difficulty of trying to ascertain at sentencing, perhaps from a paper record mentioning only a guilty plea, whether the present defendant's prior crime, as committed on a particular occasion, did or did not involve violent behavior. Thus, to determine, for example, whether attempted burglary is a "violent felony," we have had to examine, *not the unsuccessful burglary the defendant attempted on a particular occasion, but the generic crime of attempted burglary.*

<u>Id</u>. at 125 (citations omitted) (emphasis added).

The Court went on to note that the categorical approach "requires courts to choose

the right category":

> And sometimes the choice is not obvious. The nature of the behavior that likely underlies a statutory phrase matters in this respect. Where Massachusetts, for example, placed within a single, separately numbered statutory section (entitled "Breaking and entering at night"), burglary of a "building,

17

> ship, vessel or vehicle," this Court found that the behavior
> underlying, say, breaking into a building differs so
> significantly from the behavior underlying, say, breaking into
> a vehicle that for ACCA purposes a sentencing court must
> treat the two as different crimes.

Id. at 126 (citation omitted). The Court explained that the Illinois "failure to report"

crime was part of a broader state statute that, like the Massachusetts burglary statute at

issue in Shepard and Taylor, "places together in a single numbered statutory section

several different kinds of behavior." Id. The Illinois statute "separately describes those

behaviors as (1) escape from a penal institution, (2) escape from the custody of an

employee of a penal institution, (3) failing to report to a penal institution, (4) failing to

report for periodic imprisonment, (5) failing to return from furlough, (6) failing to return

from work and day release, and (7) failing to abide by the terms of home confinement."

Id.

The Court noted that the state-court information in the record established that the

defendant had pled guilty to knowingly failing to report for imprisonment, "[b]ut we must

decide whether for ACCA purposes a failure to report counts as a separate crime." Id.

The Court held that

> a failure to report (as described in the statutory provision's
> third, fourth, fifth, and sixth phrases) is a separate crime,
> different from escape (the subject matter of the statute's first
> and second phrases), and from the potentially less serious
> failure to abide by the terms of home confinement (the subject
> of the final phrase). The behavior that likely underlies a
> failure to report would seem less likely to involve a risk of
> physical harm than the less passive, more aggressive behavior
> underlying an escape from custody. Moreover, the statute

18

itself not only lists escape and failure to report separately (in its title and its body) but also places the behaviors in two different felony classes (Class Two and Class Three) of different degrees of seriousness.

Id. at 126-27 (citations omitted). The Court treated the statutory phrases that set forth various kinds of failure to report or return as "variations on a single theme" and thus "a single category." Id. at 127. The Court therefore treated the Illinois statute "for ACCA purposes as containing at least two separate crimes" – escape from custody and failure to report. Id.

The Court concluded that the "failure to report" crime does not satisfy the ACCA's "violent felony" definition, 18 U.S.C. § 924(e)(2)(B), because it "does not have 'as an element the use, attempted use, or threatened use of physical force against the person of another,'" Chambers, 555 U.S. at 127-28; it "does not consist of 'burglary, arson, or extortion,' or 'involv[e] use of explosives,'" id. at 128; and, "critically," it "does not 'involve conduct that presents a serious potential risk of physical injury to another,'" id. (quoting 18 U.S.C. § 924(e)(2)(B)). The Court explained that, "[c]onceptually speaking," the crime of failure to report "amounts to a form of inaction, a far cry from the purposeful, violent, and aggressive conduct potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion" – recognized types of ACCA-predicate violent felonies. Id. (internal quotation marks omitted). "While an offender who fails to report must of course be doing *something* at the relevant time, there is no reason to believe that the *something*

19

poses a serious potential risk of physical injury.  To the contrary, an individual who fails to report would seem unlikely, not likely, to call attention to his whereabouts by simultaneously engaging in additional violent and unlawful conduct."  Id. (citation omitted).  Concluding that the "crime here at issue falls outside the scope of ACCA's definition of 'violent felony,'" id. at 130, the Court remanded the case for resentencing.

More recently, the Supreme Court, reviewing the development of the modified categorical approach, has suggested that the approach is available only where a statute of prior conviction is divisible into predicate and non-predicate offenses.  In Nijhawan v. Holder, a 2009 immigration case, the Court, reviewing Taylor and James, noted that "the categorical method is not always easy to apply":

> [S]ometimes a separately numbered subsection of a criminal statute will refer to several different crimes, each described separately.  And it can happen that some of these crimes involve violence while others do not.  A single Massachusetts statute section entitled "Breaking and Entering at Night," for example, criminalizes breaking into a "building, ship, vessel or vehicle."  In such an instance, . . . a court must determine whether an offender's prior conviction was for the violent, rather than the nonviolent, break-ins that this single five-word phrase describes (*e.g.*, breaking into a building rather than into a vessel), by examining the indictment or information and jury instructions, or, if a guilty plea is at issue, by examining the plea agreement, plea colloquy or some comparable judicial record of the factual basis for the plea.

557 U.S. 29, 35 (2009) (internal quotation marks and citations omitted).

Finally, in Johnson v. United States, 130 S. Ct. 1265 (2010), the Court analyzed whether the Florida felony offense of battery by "[a]ctually and intentionally touch[ing]"

another person, Fla. Stat. § 784.03, "has as an element the use . . . of physical force against the person of another," 19 U.S.C. § 924(e)(2)(B)(i), and thus constitutes a violent felony under the ACCA.  130 S. Ct. at 1268.  Much of the opinion focuses on the meaning of the term "physical force," see id. at 1271-73, but the Court also addressed the circumstances under which the modified categorical approach is available.  In response to concerns raised by the government that the Court's narrow definition of "physical force" could undermine the government's ability to obtain removal of an alien based on prior convictions for battery, see id. at 1273, the Court stated that the modified categorical approach was available "[w]hen the law under which [a] defendant has been convicted contains *statutory phrases that cover several generic crimes*, some of which require violent force and some of which do not," and that in such cases the modified approach "permits a court to determine *which statutory phrase* was the basis for the conviction by consulting the trial record."  Id. at 1273-74 (emphasis added); see also Nijhawan, 557 U.S. at 41 (noting that the modified categorical approach can be used to "determin[e] which statutory phrase (contained within a statutory provision that covers several different generic crimes) covered a prior conviction").

B.  The Second Circuit's Approach

In the contexts of the ACCA and the removability provisions of the Immigration and Nationality Act ("INA") for aliens convicted of aggravated felonies, see 8 U.S.C. § 1101(a)(43), our Court has said that the purpose of the modified categorical inquiry is to determine "which part of the statute" of prior conviction "the defendant was convicted of

21

violating, at least where the statute of conviction is divisible" into predicate and non-predicate offenses.  United States v. Baker, 665 F.3d 51, 55 (2d Cir. 2012) (interpreting the ACCA) (internal quotation marks omitted); see also Akinsade v. Holder, 678 F.3d 138, 144 (2d Cir. 2012) (INA) ("[W]here a statute is 'divisible,' such that some categories of proscribed conduct render an alien removable and some do not, application of a 'modified categorical' approach is appropriate." (internal quotation marks omitted)); Lanferman v. BIA, 576 F.3d 84, 88-89 (2d Cir. 2009) (INA) ("The modified categorical approach calls for a two-step inquiry: first, we determine if the statute is divisible, such that some categories of proscribed conduct render an alien removable and some do not; second, we consult the record of conviction to ascertain the category of conduct of which the alien was convicted." (internal quotation marks omitted)); Wala v. Mukasey, 511 F.3d 102, 108 (2d Cir. 2007) (INA); Dickson v. Ashcroft, 346 F.3d 44, 48 (2d Cir. 2003) (INA).

However, our Court has never provided a clear definition of what "divisible" means.  We have acknowledged this ambiguity in INA and ACCA cases.  In INA cases, we have noted, for example, that we have "not yet fixed on an approach for determining when a statute is [] divisible," Oouch v. DHS, 633 F.3d 119, 122 (2d Cir. 2011), and suggested that statutes of conviction might be divisible "regardless of their structure, so long as they contain an element or elements that could be satisfied either by removable or non-removable conduct," Lanferman, 576 F.3d at 91 (internal quotation marks omitted). And we have described as an "open question" the issue of "whether a statute is divisible

22

and therefore susceptible to the modified categorical approach when it encompasses both removable and non-removable offenses, but does not describe the removable offenses only in distinct subsections or elements of a disjunctive list." Hoodho v. Holder, 558 F.3d 184, 189 n.3 (2d Cir. 2009). Similarly, in ACCA cases, we have stated that "[a]lthough certain of this Court's decisions suggest that a statute is susceptible to [modified categorical] analysis when it encompasses both violent felonies and other crimes, but does not describe the violent felonies only in distinct subsections or elements of a disjunctive list, other recent decisions have indicated that this is an open question." United States v. Daye, 571 F.3d 225, 229 n.4 (2d Cir. 2009) (citations omitted).

Nevertheless, at least in practice, our Court, in both the INA and ACCA contexts, has applied the modified categorical approach only to situations where the statute of prior conviction described qualifying and non-qualifying offenses in distinct subsections or elements of a list. No case of ours, that is, has determined a statute to be "divisible" when the statute prohibits a broad category of conduct described by a single generic formulation, which encompasses both conduct that would trigger application of an adverse consequence in a subsequent case, and conduct that would not.

C. Other Circuits' Approaches

Most of our sister circuits, in a range of contexts that includes the ACCA and the INA, have adopted a divisibility rule for the modified categorical approach.[2] The First,

---

[2] Many of the cases cited in this section were collected by Judge Berzon of the Ninth Circuit. See United States v. Aguila-Montes de Oca, 655 F.3d 915, 952-55 (9th Cir. 2011)

Third, Fourth, Fifth, Seventh, Eighth, and Eleventh Circuits all take the view that only statutes of prior conviction that are divisible into qualifying and non-qualifying predicate offenses may be subject to modified categorical analysis.[3] The approaches of the Sixth[4]

---

(Berzon, J., concurring in the judgment) (reviewing other circuits' decisions and concluding: "*All* of our sister circuits (except for the District of Columbia Circuit, which apparently has had no occasion to weigh in on whether the modified categorical approach applies beyond the divisible statute context) now apply the modified categorical approach only to divisible statutes." (footnotes omitted)).

[3] See United States v. Giggey, 551 F.3d 27, 40 (1st Cir. 2008) ("Under the categorical approach, a federal sentencing court may not create a series of federal subcategorizations to fit the facts of a particular case. . . . If the state statute does not contain such a distinction, the federal court may not create one . . . ."); Jean-Louis v. Attorney Gen., 582 F.3d 462, 471-72 (3d Cir. 2009) ("Where a statute of conviction contains disjunctive elements, some of which are sufficient for conviction of the federal offense and others of which are not, we have departed from a strict categorical approach. . . . We depart farther from the formal categorical approach only where the language of a particular subsection of a statute invites inquiry into the underlying facts of the case." (internal quotation marks, brackets, and ellipsis omitted)); United States v. Rivers, 595 F.3d 558, 562-64 (4th Cir. 2010) (rejecting use of the modified categorical approach to determine whether a state conviction for failure to stop for a flashing blue light contained the element of criminal intent necessary to render it a "violent felony" under the ACCA); United States v. Gonzalez-Terrazas, 529 F.3d 293, 297-98 (5th Cir. 2008) (modified approach is available "if the statute of conviction contains a series of disjunctive elements," and may be used "only to determine of which subsection of a statute a defendant was convicted" (internal quotation marks omitted)); United States v. Goodpasture, 595 F.3d 670, 672-73 (7th Cir. 2010) ("When a statute sets out different ways to commit a crime, it may be necessary to consult the charging papers and plea colloquy to classify such a 'divisible' offense correctly. But the prosecutor does not argue that [the state statute of conviction] is 'divisible' . . . . We therefore stop with the language of [the state statute], which is not a 'violent felony' under either subsection of [18 U.S.C.] § 924(e)(2)(B)."); United States v. Woods, 576 F.3d 400, 410-13 (7th Cir. 2009) (modified categorical approach is permitted "only where the statute defining the crime is divisible, which is to say where the statute creates several crimes or a single crime with several modes of commission," defined as "modes of conduct identified somehow in the statute"); United States v. Boaz, 558 F.3d 800, 808 (8th Cir. 2009) ("Neither we nor the Supreme Court have approved a methodology that would decouple the limited review of record materials from an element-by-element analysis of the predicate offense. In other words, [the modified

24

and Tenth Circuits[5] are somewhat ambiguous, and the D.C. Circuit appears not to have

---

categorical approach may be used] *only* to determine which part of the statute the defendant violated." (quotation marks and citations omitted)); United States v. Palomino Garcia, 606 F.3d 1317, 1336-37 (11th Cir. 2010) (noting that "when the law under which a defendant has been convicted contains different statutory phrases – some of which require the use of force and some of which do not – the judgment is ambiguous and we apply a 'modified categorical approach'" under which "a court may determine which statutory phrase was the basis for the conviction by consulting a narrow universe of 'Shepard documents'").

[4] Compare United States v. Ferguson, 681 F.3d 826, 835 (6th Cir. 2012) (analyzing subsections of Michigan's fourth-degree criminal sexual conduct statute, "a divisible statute"), and Kellerman v. Holder, 592 F.3d 700, 703 (6th Cir. 2010) ("[I]f the statute contains some offenses which involve moral turpitude and others which do not, it is to be treated as a 'divisible' statute, and we look to the record of conviction . . . ."), with United States v. Armstead, 467 F.3d 943, 947-48 (6th Cir. 2006) (applying the modified categorical approach where state statute of conviction was "ambiguous"); see also United States v. Young, 580 F.3d 373, 380 n.8 (6th Cir. 2009) ("Shepard documents may only be examined where a statutory provision can be divided into two or more criminal categories, at least one of which is a violent felony and at least one of which is not.").

[5] Compare United States v. Zuniga-Soto, 527 F.3d 1110, 1113 (10th Cir. 2008) ("[A] court may consider certain judicial records only for the purpose of determining which part of a divisible statute was charged against a defendant and, therefore, which part of the statute to examine on its face."), and United States v. Herrera, 286 F. App'x 546, 552 (10th Cir. 2008) (unpublished) ("[T]he modified approach is properly used when the underlying statute of conviction contains multiple element sets and is therefore divisible. . . . . [T]he modified categorical approach is properly used when the underlying crime of conviction may be accomplished by two or more separate element sets."), with United States v. Antonio-Agusta, 672 F.3d 1209, 1212 (10th Cir. 2012) ("If the statute is ambiguous, however, or broad enough to encompass both violent and nonviolent crimes, a court can look beyond the statute to certain records of the prior proceeding . . . ." (internal quotation marks omitted)), and United States v. Venzor-Granillo, 668 F.3d 1224, 1231 (10th Cir. 2012) ("[T]he modified categorical approach applies whenever a statute of conviction is ambiguous because it reaches a broad range of conduct, some of which merits an enhancement and some of which does not. The purpose, at least with respect to generic offense enhancement provisions, is to enable the sentencing court to determine whether the jury necessarily had to find, or the defendant necessarily admitted, all the elements of the generic offense . . . ." (internal quotation marks and citation omitted)). The Tenth Circuit has held that, in the context of the Sentencing Guidelines, the "proper scope" of the modified categorical approach "depends on whether the prior conviction is evaluated as a crime of violence" under the Guideline's

addressed the issue.[6]  Only the Ninth Circuit has clearly rejected a divisibility requirement

for the modified categorical approach, and has done so in sharply divided en banc panels.[7]

That court has treated the distinction between divisible and non-divisible statutes as

semantic: "The only conceptual difference between a divisible statute and a non-divisible

statute is that the former creates an *explicitly* finite list of possible means of commission,

while the latter creates an *implied* list of every means of commission that otherwise fits

the definition of a given crime."  United States v. Aguila-Montes de Oca, 655 F.3d 915,

927 (9th Cir. 2011) (en banc).  However, several distinguished members of that court

category of offenses that have "as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 2L1.2 cmt. n.1(B)(iii), or under the Guideline's "list of enumerated offenses.  If the former, the modified categorical approach has a narrow application . . . .  If the latter, the modified categorical approach has a broader application . . . ."  United States v. Martinez-Zamaripa, 680 F.3d 1221, 1223-24 (10th Cir. 2012) (citation omitted).

[6] See United States v. De Jesus Ventura, 565 F.3d 870, 875-80 (D.C. Cir. 2009) (concluding that defendant's conviction for felonious abduction under Virginia law was not categorically a conviction of an ACCA "crime of violence," and that "[e]ven under the modified categorical approach" the defendant's conviction did not qualify as an ACCA predicate because defendant "did not admit facts amounting to generic kidnapping through his plea of nolo contendere, and the judge who accepted his plea did not find him guilty of such facts"; the court did not state whether divisibility was required for application of the modified categorical approach).

[7] See United States v. Aguila-Montes de Oca, 655 F.3d 915, 928-31, 935-38 (9th Cir. 2011) (en banc) (acknowledging "that language in [Nijhawan v. Holder, 557 U.S. 29 (2009), and Johnson v. United States, 130 S. Ct. 1265 (2010)] provides support for limiting the modified categorical approach to divisible statutes," but ultimately rejecting this approach and holding that the modified categorical approach may be applied not just to divisible statutes but also to "missing-element statutes," i.e., state statutes that lack an element of the generic federal crime); United States v. Strickland, 601 F.3d 963, 966 & n.1 (9th Cir. 2010) (en banc) (applying the modifying categorical approach to a child abuse conviction under a Maryland statute that did not divide offenses into predicate and non-predicate offenses).

have recognized that it is an outlier in its approach: as Judge Berzon noted, in a concurrence joined by Chief Judge Kozinski and Judges William Fletcher, Milan Smith, and N. Randy Smith, "since 2008, and especially since [Nijhawan v. Holder, 557 U.S. 29 (2009)], there has been a steady march" across the circuits nationwide "toward applying the modified categorical approach only to divisible statutes." Aguila-Montes de Oca, 655 F.3d at 952 (Berzon, J., concurring in the judgment). By abandoning its prior divisibility requirement, Judge Berzon noted, the Ninth Circuit "becomes the only [circuit] to expand the scope of our modified categorical inquiries in the wake of the Supreme Court's recent, lucid direction" – in Johnson and Nijhawan – "that we narrowly restrict them." Id. at 955-56 (Berzon, J., concurring in the judgment).[8]

The decisions cited above arise in a variety of criminal and immigration contexts requiring courts to decide whether a given prior crime is a predicate for adverse treatment under some federal law. In the specific context of 18 U.S.C. § 2252A(b) and the substantially similar enhancement provisions of 18 U.S.C. §§ 2251(e) and 2252(b), nearly all courts have consistently followed the same approach. That is, when deciding whether a state offense is a predicate for enhanced punishment under the particular statute involved in this case, and in similar statutes under the same Title, it appears that all circuits except the Ninth – regardless of whether they have announced a divisibility rule –

---

[8] Judge Bybee, in his majority opinion joined by Judges Rymer, Silverman, Gould, Rawlinson, and Callahan, disputed Judge Berzon's characterizations of some of the out-of-circuit cases. See Aguila-Montes de Oca, 655 F.3d at 933-35. We find Judge Berzon's reading of those cases more persuasive than the majority's.

have applied the modified categorical approach only where the state statute of conviction

was divisible into predicate and non-predicate offenses, and *not* where the state statute

was merely broad.[9]

When the Third Circuit reviewed prior state convictions under broad but

indivisible Pennsylvania statutes dealing with "Corruption of Minors," "Endangering the

Welfare of a Child," and "Indecent Assault," the court limited itself to application of the

categorical approach to determine whether the convictions qualified as predicate offenses

under 18 U.S.C. § 2251(d) (now codified at 18 U.S.C. § 2251(e)).[10]  The district court had

---

[9] In nearly all of the out-of-circuit cases that we have reviewed in which a court applied the modified categorical approach in order to conclude that a state conviction qualified as a predicate offense under 18 U.S.C. §§ 2252(b), 2252A(b), or 2251(e), the state statutes of conviction were divisible into predicate and non-predicate offenses – even where the circuit courts have not announced a divisibility requirement.  See, e.g., United States v. Spence, 661 F.3d 194, 199 (4th Cir. 2011); United States v. Osborne, 551 F.3d 718, 721 (7th Cir. 2009); United States v. Sonnenberg, 556 F.3d 667, 669-70 (8th Cir. 2009); United States v. Harding, 172 F. App'x 910, 912-13 (11th Cir. 2006).  And again, only the Ninth Circuit seems clearly to have departed from this approach.  See Strickland, 601 F.3d at 966 & n.1 (9th Cir. 2010) (en banc) (applying the modifying categorical approach to a child abuse conviction under a Maryland statute that did not divide offenses into predicate and non-predicate offenses).

[10] The language of the sentencing enhancement in § 2251 is similar to § 2252A(b)(1), the statute at issue in the present case:

> Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years, but if such person has one prior conviction under . . . the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person

considered the defendant's "guilty plea hearing in state court, the elements of the state offenses he pled guilty to, and the relevant proof offered by the state in its prosecution." United States v. Galo, 239 F.3d 572, 577 (3d Cir. 2001). The Third Circuit vacated the sentence and held that only the categorical approach was available. Id. at 582. The language of Pennsylvania's "Endangering the Welfare of a Child" statute is similar to the language of the New York statute at issue in our case:

> A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa. Cons. Stat. Ann. § 4304. As the Third Circuit noted, Pennsylvania's statute "clearly relates to a breach of the duty of care rather than sexual abuse or exploitation," and "includes such conduct as parents refusing to obtain medically necessary treatment for a child based upon religious beliefs. It also criminalizes such negligent parental conduct as leaving a plastic bag too close to a sleeping infant who subsequently suffocates." Galo, 239 F.3d at 582 (citations omitted). The other two state statutes at issue in Galo were similarly broadly worded. See id. at 582-83.

The Third Circuit rejected the government's argument that a court could depart from the strict categorical approach and look to the underlying facts of state convictions

---

shall be fined under this title and imprisoned for not less than 25 years nor more than 50 years . . . .

18 U.S.C. § 2251(e).

29

under these broad, indivisible statutes.  See id. at 583.  That the defendant's state convictions under these statutes might have involved *conduct* relating to the sexual exploitation of children did not permit courts to apply the modified categorical approach, and therefore did not trigger § 2251(d)'s sentencing enhancement, because "none of the statutory definitions of those three crimes establish a conviction under 'laws relating to the sexual exploitation of children.'"  Id., quoting 18 U.S.C. § 2251(d) (now codified at § 2251(e)).

Although it involved a different section of Title 18 – albeit a section with a "relating to" clause nearly identical to the one in § 2252A(b) – Galo is in other respects very similar to our case.  Like Beardsley, Galo was convicted in state court for endangering the welfare of a child, under a state statute that was not divided into predicate and non-predicate offenses.  Like Beardsley, Galo was required as part of his state-court plea to complete a sex-offender program.  And in each case, the district court "focused on [the defendant's] *conduct*, as opposed to the elements of the offenses he was convicted of in state court."  Id. at 577.

II.     Application to 18 U.S.C. § 2252A(b)(1)

In the present case, we follow the Third Circuit's approach in Galo and hold that the district court should have limited itself to the categorical approach, because the New York statute of conviction is not divisible into predicate and non-predicate offenses, listed

in separate subsections or a disjunctive list.[11]  In determining the applicability of the sentence enhancement in 18 U.S.C. § 2252A(b)(1), such divisibility is required if the modified categorical approach is to be employed.  That a statute of prior conviction is merely broadly worded, so as to encompass *conduct* that might match the federal predicate offenses, does not suffice.  We reach that conclusion for a number of reasons.

First, the language of § 2252A(b)(1) drives powerfully toward that conclusion.  By its terms, the statute requires a sentence enhancement based not on a defendant's prior *conduct*, but on whether he "has a prior conviction . . . under *the laws* of any State *relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor* or ward."  18 U.S.C. § 2252A(b)(1) (emphasis added).  Congress did not predicate the enhancement on what a defendant has done, or even on the particular actions that led to a conviction, but rather on the nature of the *law* under which the conviction was obtained.  This language strongly suggests some version of a categorical approach.  The conviction must be under a law that relates to the sexual abuse of minors.  Of course, some statutes deal with more than one type of behavior; states sometimes combine two or more offenses or types of offenses in the same statute, thus requiring the occasional use of a *modified* categorical offense.  But the statute underlying the prior conviction must itself relate to sexual abuse of minors for the enhancement to apply.

---

[11] To be more precise, the statute does create two offenses, the broad child endangerment offense at issue here and a more specific alternative offense for "direct[ing] or authoriz[ing]" a child "to engage in an occupation involving a substantial risk of danger to his or her life or health," N.Y. Penal Law § 260.10(1), but the defendant was not charged under that separate provision, which is itself not categorically a predicate for the sentencing enhancement in § 2252A(b)(1).

31

New York's statute prohibiting "Endangering the Welfare of a Child" is simply not that sort of law.   Although no one doubts that aggravated sexual abuse does endanger the welfare of a child, the New York statute is not a law dealing with sexual misconduct. Rather, it covers a wide variety of conduct, most of it nonsexual, that shares only the general defining characteristic of the endangerment of children in any way at all. Evidence establishing that this particular defendant violated the statute by a sexual act indicates *how* he committed the crime, not what crime he committed.  The statute relates to minors, but it does not define any offense that specifically relates to sexual abuse.

The point may perhaps be illustrated by comparison to an offense that relates to sex but is not defined with specific reference to minors.  Consider a defendant who has a prior conviction for patronizing a prostitute, and whose indictment references the fact that the prostitute in question was a minor.  The defendant may originally have been charged with statutory rape – an offense unquestionably relating to the sexual abuse of a minor – but (as in this case) the resulting conviction for a lesser offense may have been the result of a plea bargain.  As with the offense of endangering the welfare of a child, the elements of the unitary offense of prostitution cover both conduct that would fall within the § 2252A(b)(1) enhancement and conduct that would not.  But in both cases, the *statute* of conviction defines not multiple offenses, but a single offense that does not by its terms relate to the sexual abuse of minors.

Second, our approach is most consistent with the results, language, and reasoning of the Supreme Court's governing precedents.  The Court has obliged us to make a

32

somewhat formalistic distinction between when we may and may not use the modified categorical approach in order to prevent federal courts from going beyond a state-court conviction and "delving into the particular facts disclosed by the record of conviction." Shepard, 544 U.S. at 17. Although the Supreme Court has never expressly announced a divisibility rule, it has endorsed the use of the modified categorical approach *only* in cases involving state statutes that are divisible by the definition we apply here. In Taylor and Shepard, the state burglary statute defined burglary more broadly than the generic federal definition of burglary, but listed different types of offenses, some of which mirrored the generic definition and others of which did not. Taylor, 495 U.S. at 599-602; Shepard, 544 U.S. at 17. Similarly, the Illinois state statute in Chambers separately listed "several different kinds of behavior." 555 U.S. at 126.

Not only the results but also the language with which the Supreme Court has described the applicability of the modified categorical approach suggests that divisibility be defined in terms of express definition of multiple crimes in the same statute. In Johnson, the Court stated that the modified categorical approach is available "[w]hen the law under which [a] defendant has been convicted contains statutory phrases that cover *several* generic crimes, some of which require violent force and some of which do not," and that the modified approach's purpose is "to determine *which statutory phrase* was the basis for the conviction by consulting the trial record." 130 S. Ct. at 1273 (emphasis added); see also Nijhawan, 557 U.S. at 41. Similarly, in defining the categorical approach itself, the Court has emphasized that "we consider the offense generically, that

33

is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." Begay, 553 U.S. at 141. In dealing with statutes that use language similar to that of § 2252A(b)(1), the Court has applied a consistent approach to decide whether a prior conviction triggers the sentence enhancement, regardless of whether the statute governing the prior conviction defines a single offense or multiple separate offenses: determine whether the offense of conviction is a *crime* that, by its defining elements, categorically is of the type defined by the sentence enhancement.

The conceptual framework of the Supreme Court's modified categorical approach is more consistent with our definition than with the alternatives for which the government argues. It is important in this regard to remember what the modified categorical approach *modifies*. The point of the categorical approach is that a court does not attempt to determine what the defendant did and then to see whether that conduct matches the enhancing conditions. Rather, the statute directs, and the Supreme Court instructs, that courts are supposed to look to see *what offense the defendant was convicted of*, as determined by the elements of the offense of conviction. See Shepard, 544 U.S. at 19-23. It is in that sense that the approach is "categorical": it looks to see whether the offense of conviction categorically, in every case, necessarily matches the enhancement's terms.[12]

---

[12] The reason the categorical approach needs to be *modified* in certain cases is that some state statutes create multiple distinct offenses: the same statute might penalize the "sale or possession" of narcotics, for example, and a federal statute attaching consequences for a conviction for narcotics trafficking would cover one possibility but not the other. The

An approach that simply asks whether the conduct underlying the conviction, as disclosed in the charging instruments or the plea colloquy or the jury instructions, is the sort of conduct referenced in the sentence enhancement, is not a *modified* categorical approach; it is not "categorical" at all.

Third, the approach to divisibility we take here is also consistent with our own precedents – not surprisingly, as our precedents track the results and follow the language of the Supreme Court's cases. Although we have not previously considered the question in the context of the child pornography sentencing enhancements,[13] in other contexts, at least in practice, our Court has limited application of the modified categorical approach to divisible state statutes, as discussed above. See Part I.B, supra; see also Dickson, 346 F.3d at 48 ("Where . . . a criminal statute encompasses diverse classes of criminal acts – some of which would categorically be grounds for removal and others of which would not – we have held that such statutes can be considered 'divisible' statutes."); Akinsade, 678

---

categorical approach is then "modified" to allow us to determine which branch of the statute was the basis for the conviction. But to expand the approach to cases in which the count of conviction was merely "possession" of narcotics, because in some cases the underlying conduct was possession in connection with a sale, would simply abandon the categorical approach in favor of determining, in every case, whether the underlying *conduct*, rather than the underlying *offense* triggers the enhancement.

[13] Cf. United States v. Rood, 679 F.3d 95, 98 (2d Cir. 2012) (applying the modified categorical approach, which both parties agreed was the appropriate approach, to determine whether a conviction under the Ohio state crime of "Gross Sexual Imposition," Ohio Rev. Code Ann. § 2907.5, should be deemed a state sex offense, equivalent to 18 U.S.C. § 2241(c), for the purpose of the 18 U.S.C. § 3559(e) sentencing enhancement for repeat sexual offenders, where the state and federal sex-offense statutes were "substantially similar, with the exception of the age cutoff" specified by each statute (footnote omitted)).

F.3d at 144 (the modified categorical approach is appropriate "where a statute is 'divisible'"); Baker, 665 F.3d at 55 (the modified categorical approach is used to determine "which part of the statute" of prior conviction defendant "was convicted of violating, at least where the statute of conviction is divisible"). Moreover, as also discussed at greater length above, this approach is consistent with the approach taken by most of our sister circuits. All of the other circuits that have had occasion to apply the modified categorical approach, with the exception of the Ninth Circuit, have either expressly adopted a divisibility rule of the sort we adopt today, or, while avoiding a broad formulation, have applied the approach only in cases that are consistent with that rule. See Part I.C, supra.

Guided by the language of the statute, the Supreme Court's precedents, and our own, we conclude that only statutes that are divisible in the sense that they define a number of separate offenses may be subject to the modified categorical approach under § 2252A(b)(1). The distinction between divisible and non-divisible statutes of conviction is not merely semantic, as the Ninth Circuit has suggested. See Aguila-Montes de Oca, 655 F.3d at 927. On the contrary, the distinction is necessary to preserve the categorical approach and prevent the exception – and the Supreme Court has made clear that the modified categorical approach is intended to be a "narrow" exception to the general use of the categorical approach, see Taylor, 495 U.S. at 602 – from swallowing the rule.

We do not by any means suggest that there are no arguments for a different conclusion. There is an understandable temptation to apply the modified categorical

methodology more generally than the Supreme Court has authorized. It would not be irrational as a matter of policy to apply a sentence enhancement whenever a court could identify with sufficient reliability what a defendant actually did. And while looking to police reports and other hearsay accounts of the underlying conduct leading to the conviction would be dangerous – since that information was never submitted to a jury, or formally admitted by the defendant – and would lead to time-consuming fact-finding ventures by sentencing courts, looking to the formal documents related to the case, as is permitted where the modified categorical approach applies, would not seem to present those problems. Moreover, there is some force to the argument made by the Ninth Circuit, see Aguila-Montes de Oca, 655 F.3d at 931-32, that the divisibility standard makes the permissibility of considering such documents turn on the unpredictable vagaries of state statutory drafting. For example, if the New York statute at issue here had been worded to punish

> (a) inappropriate sexual contact with a minor, or
> (b) endangering the welfare of a child by any other means

or

> endangering the welfare of a child by inappropriate sexual
> contact or any other means,

such distinct subsections or such a disjunctive list of offense conducts would have permitted us to apply the modified categorical approach to assess the charging documents and other Shepard materials to determine under which subsection or distinct phrase of the statute the defendant had been convicted.

37

While a rule permitting broader use of reliable judgment-related information may make policy sense, that is not the approach Congress took in § 2252A(b)(1) when it referred to the kind of *statute* that a defendant violated rather than to the kind of *behavior* he exhibited.  Nor would it be consistent with the clear import of the Supreme Court's instructions in <u>Taylor</u>, <u>Shepard</u>, and other cases.  That approach involves *two* steps: first, a sentencing court is to determine whether the statute of prior conviction is the sort that permits looking beyond a categorical analysis of the elements of the state offense; second, if it is, the court is permitted to look to some, but not other, sources to determine the actual basis of conviction.  But under the approach suggested by the government in this case, the first step would be eliminated: in all cases in which the conviction is under a broadly worded statute and thus *might* be based on conduct that would trigger the federal sentencing enhancement, the court would look beyond the offense of conviction and review additional documents.  That would be inconsistent with Supreme Court precedent, and that is why, in our view, most other circuits have not adopted that approach.

There would be nothing in such an approach that could fairly be described as "categorical" – "modified" or otherwise.  Instead, whenever a defendant had a prior conviction for violating a broad state statute the elements of which could conceivably cover *conduct* that matches the enhancement's terms, application of the enhancement would turn on the *actual behavior* charged, as found in the charging instrument or other acceptable documents, and not on the categorical analysis of the elements of an offense or a sub-offense defined by the statute.  We would, in that event, be looking not at the type

38

of offense, but at the particular instance of it. Such a method would be inconsistent with the purposes of the modified categorical approach as articulated by the Supreme Court. Either a court tries to determine the *conduct* underlying the offense, or it looks to the *elements of the offense of conviction*. Where the language of the federal sentencing enhancement directs us to the offense of which the defendant was convicted, as this one does, the Supreme Court has taken the latter, "categorical" approach.

Moreover, while there are some attractions to permitting reliable materials relating to the conduct underlying a conviction to be broadly used, there are also strong policy considerations supporting the more insistently categorical approach that Congress and the Supreme Court have taken. Although the § 2252A(b)(1) sentence enhancement did not dramatically increase the sentence, given the serious penalties already attaching to Beardsley's offense of conviction, § 2252A(b)(1)'s provisions may lead to considerably higher sentences than defendants otherwise would have received. It may do so either by requiring a mandatory sentence that could be well above the guidelines recommendations or by overriding the considered judgment of the sentencing judge that a below-Guidelines sentence is appropriate in a particular case. Like the child endangerment statute in this case, broadly worded catch-all offenses are often misdemeanors, and as this case illustrates, are often used as fallback or compromise charges where a more serious conviction under a more specific statute is not, for whatever reason, attainable. It is not surprising that Congress would word a mandatory sentencing statute narrowly, and that the Supreme Court would not be quick to interpret it to apply where there is less than

39

complete certainty that the prior conviction was for an offense that clearly triggers the mandatory sentence. That is why the Supreme Court has generally opted for the categorical approach – "modified" only in a "narrow range of cases." Taylor, 495 U.S. at 602.

To be sure, this case presents a close question, one that neither the Supreme Court nor our own precedents squarely answer. Nevertheless, our own binding precedents and the considered approaches of the majority of our sister circuits convince us that the district court erred in this case. While reasonable people could disagree about the intrinsic merit of imposing a formalistic limitation on use of the modified categorical approach, the weight of precedent makes clear that the Supreme Court has imposed that limitation. Accordingly, the district court should not have engaged in the modified categorical approach, because New York Penal Law § 260.10(1) is not divisible into qualifying and non-qualifying offenses under 18 U.S.C. § 2252A(b)(1). The New York law does not "provide[] two distinct avenues for a violation." Herrera, 286 F. App'x at 552. It contains no "distinct subsections or elements of a disjunctive list." Baker, 665 F.3d at 55; see also United States v. Fife, 624 F.3d 441, 444-46 (7th Cir. 2010) (concluding that a broadly worded Illinois armed-violence statute was divisible "not because each subcategory [of crimes] is separately listed, but because by its terms it creates several crimes or a single crime with several modes of commission," and the statute "expressly identifies several ways in which a violation may occur" (internal quotation marks omitted)); United States v. Sonnenberg, 628 F.3d 361, 367 (7th Cir.

40

2010) (rejecting application of the modified categorical approach to a state statute that "simply was not drafted so as to be divisible," even though conduct underlying conviction was clear).

Indeed, New York's legislature has chosen to address sexual assault crimes in different statutes altogether – Beardsley, after all, was originally charged under one of them, before he pled guilty to the lesser misdemeanor offense of endangering the welfare of a child. Section 260.10 makes no mention of sex crimes, and lacks *any elements* that could be construed as defining a sexual crime. Cf. Aguila-Montes de Oca, 655 F.3d at 935-38 (modified categorical approach may be applied not just to divisible statutes but also to "missing-element statutes" – i.e., statutes missing an element of the generic crime). Thus, New York's definition of endangering the welfare of a child is not merely an overinclusive state statute that defines some crimes that are analogous to the generic federal sex crimes listed in 18 U.S.C. § 2252A(b)(1) and others that are not. Nor is it simply missing an element of a federal-predicate sex crime. It is a categorically distinct law.

We therefore join the majority of our sister circuits in adopting a divisibility requirement for application of the modified categorical approach, at least for purposes of § 2252A(b)(1). Under such a rule, courts should "depart . . . from the formal categorical approach only where the language of a particular subsection of a statute invites inquiry into the underlying facts of the case" because the statute "contains disjunctive elements, some of which are sufficient for conviction of the federal offense and others of which are

41

not." Jean-Louis, 582 F.3d at 471, 466 (internal quotation marks and alterations omitted); see also Palomino Garcia, 606 F.3d at 1336-37. In such cases, the modified categorical approach allows a court to "determine which statutory phrase was the basis for the conviction" by consulting Shepard-approved documents from the trial record. Johnson, 130 S. Ct. at 1273; see also Gonzalez-Terrazas, 529 F.3d at 298 ("[W]e use the modified categorical approach only to determine of which subsection of a statute a defendant was convicted." (internal quotation marks omitted)); Woods, 576 F.3d at 405 (modified categorical approach allows sentencing court to review Shepard-approved documents "only to determine *which* crime within a statute the defendant committed, not *how* he committed that crime").

Here, those conditions plainly are not present. New York Penal Law § 260.10(1) is not divisible in such a way that some offenses it creates could be singled out as predicate offenses relating to the sexual abuse of minors and thus qualify as 18 U.S.C. § 2252A(b)(1) predicate offenses. Accordingly, the district court should not have engaged in a modified categorical analysis, but instead should have limited itself to the strict categorical approach. Under that approach, Beardsley's prior conviction under New York Penal Law § 260.10(1) was not a prior conviction "under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor." 18 U.S.C. § 2252A(b)(1).

We emphasize that, as this case illustrates, a finding that the underlying offense is not a predicate for a mandatory sentencing enhancement does not require the sentencing

42

judge to ignore that offense altogether. Unlike the decision about applicability of mandatory minimums, in imposing a sentence as a matter of discretion, the court can make its own factual determinations, based on any appropriate evidence, as to what the defendant did and what relevance those facts have to the goals of sentencing set out in 18 U.S.C. § 3553(a). Thus, although the mandatory enhancement does not apply in this case, on remand the district court can still consider any of Beardsley's conduct that it finds proven by a preponderance of the evidence in deciding what sentence to impose. We express no view on what sentence the district court will find appropriate, but note that our holding is not that the sentence imposed in this case was unreasonable, only that the district court was not *required* to impose it.

Finally, we note that the issues present in this case recur in many other contexts, particularly INA and ACCA cases. We do not seek to create a generalized rule for all federal sentence-enhancement statutes, including those that are worded differently from 18 U.S.C. § 2252A(b)(1), the statute at issue here. But at least under this statute, which refers to convictions under certain types of *laws*, rather than to particular *conduct*, we hold that the modified categorical approach is available to sentencing courts only if the statute of the underlying conviction is easily divisible into predicate and non-predicate offenses – i.e., divided into disjunctive subsections, or separately listed within a single provision. The Supreme Court and our own precedents make clear that the question in such cases is *what kind of statute* the defendant violated, not what conduct he likely engaged in. E.g., Nijhawan, 557 U.S. at 34; Johnson, 130 S. Ct. at 1273. The most

43

faithful way to answer that question is to use the categorical approach unless the statute of prior conviction is divisible into separately listed offenses.

## CONCLUSION

For the foregoing reasons, the sentence is vacated, and the case is remanded to the district court for resentencing consistent with this opinion.